STATE of Wisconsin EX REL. Gary TATE, Petitioner-Appellant,†

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent.

Court of Appeals

No. 00–1635. *Submitted on briefs March 21, 2001.—Decided May 2, 2001.*

2001 WI App 131

(Also reported in 630 N.W.2d 761.)

†Petition to review granted.

■■■■■■■■■■■

■■■■■

■■■■■■■■■■■■
■■■■■

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Pamela S. Moorshead* of *Buting & Williams, S.C.*, Brookfield.

On behalf of the respondent-respondent, the cause was submitted on the brief of *William C. Wolford*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Gary Tate appeals from a circuit court order affirming a decision of the Administrator of the Division of Hearings and Appeals, David H. Schwarz (Schwarz), and dismissing his petition for certiorari. For reasons discussed below, we affirm the circuit court on very narrow grounds.

### Facts

¶ 2. Tate was charged with repeated sexual abuse of a child in violation of WIS. STAT. § 948.025 (1997–98)[1] in a criminal complaint filed on November 3, 1997. He was accused of sexually assaulting his former stepdaughter on at least three occasions between August 1993 and August 1996. He denied guilt. On December 8, 1998, following a jury trial, Tate was convicted. The circuit court imposed and stayed a sentence of twenty-five years and placed Tate on probation for twenty years. As a condition of probation, he was required to serve one year in the county jail with Huber

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

privileges. As a second condition, Tate was ordered into sex offender treatment.

¶ 3. Tate filed a Notice of Intent to Seek Post-Conviction Relief with the circuit court on February 3, 1999, and a motion for postconviction relief on June 25, 1999.[2] On February 16, 1999, Tate began sex offender treatment with Joe Henger, a treatment provider under contract with the Department of Corrections (DOC). According to Henger, the purpose of sex offender treatment was to "overcome [Tate's] denial stance." As part of the treatment program, Henger required Tate to sign a release authorizing the disclosure of "information of all contact between the signed and Henger Enterprises to the offender's probation and parole agent, the Department of Corrections and any

---

[2] On November 12, 1999, Tate appealed his judgment of conviction. That appeal, No. 99–2948–CR, was placed on hold pending a supreme court decision in No. 99–2968–CR, *State v. Johnson*, a certification from this court. The issue is whether *State v. Molitor*, 210 Wis. 2d 415, 565 N.W.2d 248 (Ct. App. 1997), which holds that a jury need only unanimously agree that three or more sexual assaults occurred to constitute a "continuing course of conduct" for conviction of repeated sexual assaults of a child contrary to WIS. STAT. § 948.025, is still viable in light of *Richardson v. United States*, 526 U.S. 813 (1999), which holds that a jury must unanimously agree on the specific drug violations comprising a "continuing criminal enterprise" under 21 U.S.C. § 848.

On May 30, 2001, the supreme court issued its decision on 99–2968–CR, *State v. Johnson*, affirming the circuit court order denying Johnson's motion for a new trial. The supreme court held that under the state and federal constitutional analyses of *Molitor, Richardson*, and *Schad v. Arizona*, 501 U.S. 624 (1991), WIS STAT. § 948.025 does not violate due process or the right to a unanimous verdict.

officer of court, or any court proceedings that involve the sex offender."

¶ 4. In treatment, Tate continued to maintain his innocence just as he had done while under oath at trial. He refused to give any details regarding the specific allegations against him. Tate believed that any admissions made during counseling could be used against him if he won a new trial. He testified that his fear was based both on the release he was required to sign by Henger and the presence of six or seven other group participants in the treatment sessions, any of whom could have acted as witnesses against him in future court proceedings. Tate told Henger that, upon the advice of his counsel, he would not be able to discuss the allegations against him.

¶ 5. On April 13, 1999, Henger terminated Tate from the program after eight sessions, noting that he was resistant to admitting sexual misconduct with the victim and that he refused to give any details of sexual inappropriateness with the victim. Tate filed a Motion to Modify Probation Conditions on April 19, 1999. In his motion, Tate asked that the circuit court stay any counseling requirements until the time for a direct appeal expired or an appeal or motion for postconviction relief had been denied. He argued that under *State v. Marks*, 194 Wis. 2d 79, 89, 92, 533 N.W.2d 730 (1995), continued counseling during postconviction review jeopardized his right against self-incrimination. In a written decision, the circuit court denied his motion on June 18, 1999.

¶ 6. While his motion to modify probation conditions was pending, Tate's probation agent started revocation proceedings on May 4, 1999. The agent alleged that Tate's dismissal from the sex offenders group violated the condition of probation that he coop-

erate and complete sex offender treatment. On July 26, 1999, the hearing examiner, Administrative Law Judge Charles R. Guokas (the ALJ), issued a decision revoking Tate's probation. The ALJ found that Tate "violated his probation by failing to cooperate and complete Sex Offender treatment." On October 8, 1999, Tate filed an administrative appeal with Schwarz asking Schwarz to overturn his revocation. Schwarz sustained the ALJ's decision to revoke Tate's probation.[3]

¶ 7. On October 20, 1999, Tate brought a certiorari action petitioning the circuit court to review Schwarz's decision sustaining Tate's revocation. Tate asserted that his probation was revoked solely due to his exercise of his privilege against self-incrimination. Tate argued that the revocation of his probation for refusing to admit to child sexual assault while he was pursuing an appeal of the judgment of his conviction constitutes an error of law because such revocation punished him for exercising his privilege against self-incrimination guaranteed to him by the Fifth Amendment to the United States Constitution and article I, section 8(1) of the Wisconsin Constitution.

¶ 8. Tate further argued that the ALJ made numerous findings that were not supported by the record and were the product of an arbitrary and discriminatory decision-making process. Finally, Tate

---

[3] While the probation revocation proceedings were pending, Tate brought a postconviction motion before the trial court on June 28, 1999. In the motion, he asserted that aggregating a "large unspecified number of sexual assaults" into one count of violating WIS. STAT. § 948.025 was a constitutional error requiring a new trial. In the alternative, he contended that his trial counsel was ineffective. The circuit court denied Tate's postconviction motion in a written decision dated August 31, 1999.

argued that his proposal for an alternative to revocation should have been adopted and implemented by the DOC to avoid punishing Tate for exercising his Fifth Amendment privilege.

¶ 9. On March 28, 2000, the circuit court issued a decision which denied Tate's petition for certiorari and affirmed the decisions of the ALJ and Schwarz. Tate appeals this decision.

## Standard of Review

¶ 10. On review of an administrative agency's decision, this court owes no deference to the decision of the circuit court. Rather, this court reviews the decision of the administrative agency. *Doersching v. State Funeral Dirs. & Embalmers Examining Bd.*, 138 Wis. 2d 312, 322, 405 N.W.2d 781 (Ct. App. 1987). Our review of a probation revocation determination is limited to the following inquiries: (1) whether the agency kept within its jurisdiction; (2) whether the agency acted according to law; (3) whether the agency's actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the agency might reasonably make the order or determination in question. *Von Arx v. Schwarz*, 185 Wis. 2d 645, 655, 517 N.W.2d 540 (Ct. App. 1994). Whether the agency acted according to law is a question of law that is reviewed de novo. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 629, 579 N.W.2d 698 (1998). Appellate review of a circuit court's certiorari decision is de novo. *State ex rel. Macemon v. Christie*, 216 Wis. 2d 337, 340, 576 N.W.2d 84 (Ct. App. 1998). Whether a condition of probation violates a defendant's constitutional rights is a ques-

tion of law which we review de novo. *State v. Miller*, 175 Wis. 2d 204, 208, 499 N.W.2d 215 (Ct. App. 1993).

## Analysis

¶ 11. The issue here is whether a probationer with a pending direct appeal can be revoked for failing to admit the details of the crime for which he or she was convicted and placed on probation. We hold that a probationer with an active direct appeal on the merits cannot be revoked for refusing to admit to the crime. We further note that this does not work a hardship because, at most, treatment would be delayed until the direct appeal is disposed of and, if the term of probation is expiring, the term could be extended until treatment is completed. Certainly the circuit court's order of participation in treatment must be given effect; however, a delay until the disposal of the appeal will not lessen the authority of the circuit court.

¶ 12. The Fifth Amendment guarantees that a defendant may refuse to answer questions "where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (citation omitted). Where a realistic threat of incrimination in a separate criminal proceeding does exist, a probationer can invoke his or her Fifth Amendment privilege. We believe that it is important that the trial bench and criminal bar be made aware that there is a Fifth Amendment right which survives conviction and is very much alive and active while a direct appeal is pending. Thus, while we agree that a convicted sex offender with a pending appeal should have appropriate treatment, the remedies ordered must be fashioned to ensure that these Fifth Amendment rights are protected.

¶ 13. Tate's direct appeal of his criminal conviction was pending. The DOC, following a circuit court order, placed Tate in sex offender treatment counseling. As part of this treatment, Tate was expected to admit to the sexual assaults of his stepdaughter. He did not want to admit guilt because he feared that any admissions might be used against him if he won a new trial. Tate asserted his Fifth Amendment rights in petitioning the circuit court for a delay in his sexual offender treatment while his appeal was pending. The circuit court denied this motion.

¶ 14. At this point, Tate's obligation, if he wanted to preserve his rights, was to appeal to this court. He failed to do so. Therefore, we affirm, holding that there is waiver. We emphasize that the appropriate vehicle to seek a remedy is a motion to the circuit court to amend the conditions of probation before there is a revocation hearing. A writ of certiorari, coming after a probation revocation hearing, will result in waiver of a challenge to probation conditions.

¶ 15. While we affirm based on the narrow grounds of waiver, we emphasize that the Fifth Amendment protects Tate from being forced to self-incriminate. The State argues that our affirmance should be based on other grounds. The State would have us believe that Tate is in the same position as the probationer in *State v. Carrizales*, 191 Wis. 2d 85, 528 N.W.2d 29 (Ct. App. 1995). We disagree. In *Carrizales*, the probationer was charged with two counts of second-degree sexual assault. *Id.* at 91. Carrizales entered into a plea agreement and part of that agreement stated that the sentence recommendation would include "counseling as deemed necessary by agent." *Id.* The circuit court withheld Carrizales's sentence and placed him on probation for a period of three years. *Id.* As a

condition of probation, Carrizales was to receive "any counseling as deemed appropriate by [his] probation agent." *Id.* at 91–92. For some time, Carrizales complied with his probation conditions. *Id.* at 92. However, after about one and one-half years, Carrizales was terminated from treatment because he refused to admit that he committed the sexual assault. *Id.* At this point, Carrizales filed a Petition for Review of Sentence and for a Temporary Injunction asking the circuit court to prohibit the DOC from revoking his probation for his refusal to admit guilt. *Id.* Carrizales argued that the DOC had added a specific condition of probation not ordered by the circuit court and that his refusal to admit guilt resulted in the imposition of a penalty and violated his Fifth Amendment right against self-incrimination. *Id.* We held that Carrizales had no right against self-incrimination with regard to admitting the facts surrounding this conviction. *Id.* at 97.

¶ 16. *Carrizales* is factually distinguishable. It is true that both Tate and Carrizales argued that the conditions of probation violated their Fifth Amendment right against self-incrimination. However, Carrizales did not have a direct appeal pending. Tate did. While Carrizales may have faced a loss of liberty because of his refusal to comply with his conditions of probation, this is the bargain to which he agreed. *Id.* at 96. If his probation was revoked and Carrizales was sentenced, the circuit court could not base its sentence exclusively upon Carrizales's refusal to admit guilt. *Id.* at 97. Unlike Tate, Carrizales was not at risk of self-incrimination. Here, Tate's admissions could be used against him in a subsequent criminal proceeding.

¶ 17. The State disputes this and argues that even though Tate may win a new trial, he faced no real threat of any admissions being used against him at

that trial because he was provided with a grant of immunity under *State v. Evans*, 77 Wis. 2d 225, 235, 252 N.W.2d 664 (1977). Again, we disagree. *Evans* is distinguishable on the facts as well. *Evans* holds that admissions to *a probation or parole agent* are inadmissible against a probationer during subsequent proceedings except for purposes of impeachment or rebuttal. *Id.* at 235–36. At issue here is whether admissions to *a treatment counselor and others in group counseling* can be used against a probationer in *a subsequent criminal proceeding*.

¶ 18. In short, a new trial is *a subsequent criminal proceeding*. Our supreme court has held that if an appeal is pending on the very case in which a probationer is asked to make an admission, it is a legitimate fear that an admission may later be used against him or her if awarded a new trial. *Marks*, 194 Wis. 2d at 92. Tate had (and continues to have) a direct appeal pending. If Tate wins a new trial, there is nothing that would stop the State from using any admission Tate made during treatment against him.[4]

*By the Court.*—Order affirmed.

---

[4] The additional grounds that Tate has cited on appeal need not be discussed because if a decision on another point disposes of the appeal, we will not decide other issues raised. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).