STATE of Wisconsin EX REL. Gary TATE, Petitioner-Appellant-Petitioner,

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent.

Supreme Court

*No. 00–1635. Oral argument October 9, 2002.—Decided November 21, 2002.*

2002 WI 127

(Also reported in 654 N.W.2d 438.)

42

For the petitioner-appellant-petitioner there were briefs by *Jerome F. Buting, Pamela S. Moorshead* and *Buting & Williams, S.C.,* Brookfield, and oral argument by *Jerome F. Buting.*

For the respondent-respondent the cause was argued by *William C. Wolford,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

An amicus curiae brief was filed by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, on behalf of the Wisconsin Association of Criminal Defense Lawyers.

¶ 1. DIANE S. SYKES, J. The issue in this case is whether the state may constitutionally revoke a defendant's probation because he refuses, during court-ordered sex offender treatment, and before the time for a direct appeal has expired or an appeal has been denied, to admit to the crime of which he was convicted.

¶ 2. Gary Tate was convicted of repeated sexual assault of a child after a jury trial in which he testified and denied the offense. He was placed on probation and ordered into sex offender treatment. He was required, as a part of the treatment program, to admit to the offense. He refused, asserting his Fifth Amendment right against self-incrimination. As a result, he was terminated from the program. He moved to modify the conditions of probation, requesting that his treatment be delayed until after his appeal. This motion was denied. In the meantime, his probation was revoked for failure to cooperate with treatment.

¶ 3. On certiorari review of the probation revocation, the court of appeals found a Fifth Amendment violation, but summarily concluded that it had been waived, because Tate had not appealed the denial of his motion to modify the conditions of probation. We reverse.

¶ 4. All parties to this review now agree, as do we, that the revocation of Tate's probation was premised on a legitimate assertion of his Fifth Amendment privilege against self-incrimination, and was therefore unconstitutional. The parties also agree, as do we, that Tate's failure to appeal the denial of his motion to delay sex offender treatment did not constitute a waiver of his right to challenge his probation revocation on Fifth Amendment grounds. Finally, the parties agree that the immunity rule of *State v. Evans,* 77 Wis. 2d 225, 252 N.W.2d 664 (1977), as expanded by *State v. Thompson,* 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987), should be applied in these circumstances. We agree and hold that a defendant in this situation cannot be subjected to probation revocation for refusing to admit to the crime of conviction, unless he is first offered the protection of use and derivative use immunity for what are otherwise compulsory self-incriminatory statements.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5. Gary Tate was charged in Washington County Circuit Court with repeated sexual assault of a child in violation of Wis. Stat. § 948.025 (1999–2000).[1] The complaint accused him of sexually assaulting his former stepdaughter, D.L., on at least three occasions between August 1993 and August 1996. Tate main-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version.

tained his innocence in interviews with police, pleaded not guilty, and demanded a jury trial. He testified at trial, denying the offense, but was convicted by the jury. On February 3, 1999, the Honorable Annette K. Ziegler stayed a 25–year prison sentence and placed Tate on probation for 20 years, with one year in jail as a condition of probation. The court also ordered Tate to "participate in all counseling programs arranged by probation agent[s], including sex offender treatment."

¶ 6. Tate pursued postconviction relief, including a postconviction motion and an appeal, the latter of which was denied by the court of appeals on July 25, 2001.[2] In the meantime, however, Tate was participating in the sex offender treatment program that had been ordered as a condition of probation.

¶ 7. While serving his one-year jail term, and beginning on February 16, 1999, Tate was released one hour per week for sex offender treatment with Joe Henger, a treatment provider under contract with the Department of Corrections (DOC). Henger placed Tate in a "denier's group"—group therapy designed to help convicted sex offenders overcome their denials.

¶ 8. As a part of the treatment program, Henger required Tate to sign a release authorizing Henger to disclose any information he might acquire to Tate's "probation and parole agent, the Department of Corrections and any officer of court, or any court proceedings." Tate signed the form, but on advice of counsel refused to discuss any facts surrounding the offense for which he was convicted, believing that any statements he

_____

[2] Tate petitioned this court for review of the court of appeals' decision; the petition was denied October 23, 2001. *See* 2001 WI 117, 247 Wis. 2d 1032, 635 N.W.2d 782 (unpublished table decision).

made could be used against him if he obtained a new trial as a result of a postconviction motion or appeal.

¶ 9. On April 13, 1999, after eight sessions, Henger terminated Tate from the treatment program because of his resistance to admitting sexual misconduct with the victim and his refusal "to give any details of any sexual inappropriateness with his victim."

¶ 10. On April 19, 1999, Tate filed a motion in the circuit court to modify the conditions of his probation to delay his treatment. On May 4, 1999, Tate was served with notice of the initiation of probation revocation; the sole violation cited was his failure to cooperate with sex offender treatment. On June 18, 1999, the circuit court denied Tate's motion to modify his probation conditions. Tate did not appeal the court's order denying this motion.

¶ 11. Tate's revocation hearing was held less than two weeks later, on July 1, 1999. At the hearing, Tate expressed his willingness to undergo treatment, but explained that he had a fear of self-incrimination, based on the release he was required to sign and the presence of other participants in the treatment sessions who could be witnesses against him in future court proceedings should he secure a new trial. He was also concerned that any admission of sexual contact with the victim in his case could support a perjury charge, since he had testified at trial that no sexual misconduct had occurred. Tate's agent had warned him that his probation could be revoked if he refused to admit guilt in treatment. He had not been offered any form of immunity, nor was he advised that any statements he made in treatment would not be used against him in the event of a new trial. To the contrary, the release he was required to sign indicated that all such information would in fact be disclosed to his agent and the DOC and could be used against him "in any court proceedings."

¶ 12. On July 26, 1999, the administrative law judge issued his decision revoking Tate's probation, concluding that Tate had "violated his probation by failing to cooperate and complete Sex Offender Treatment."

¶ 13. After exhausting his administrative appeals, Tate filed a certiorari petition in Washington County Circuit Court. The Honorable Leo F. Schlaefer denied relief and upheld the probation revocation. Tate appealed, and the court of appeals held that there was a Fifth Amendment violation, but nevertheless affirmed, concluding that it had been waived.

¶ 14. More specifically, the court of appeals held that "a probationer with an active direct appeal on the merits cannot be revoked for refusing to admit to the crime."[3] *State ex rel. Tate v. Schwarz,* 2001 WI App 131, ¶ 11, 246 Wis. 2d 293, 630 N.W.2d 761. The court, however, declined to grant Tate any relief, holding that Tate's failure to separately appeal the circuit court's earlier denial of his motion to delay his treatment constituted a waiver of his Fifth Amendment challenge to the probation revocation:

> Tate's obligation, if he wanted to preserve his rights, was to appeal [the denial of his motion to modify the conditions of probation] to this court. He failed to do so. Therefore, we affirm, holding that there is waiver. We emphasize that the appropriate vehicle to seek a remedy is a motion to the circuit court to amend the conditions of probation before there is a revocation hearing. A writ of certiorari, coming after a probation revocation hearing, will result in waiver of a challenge to probation conditions.

*Id.* at ¶ 14, 246 Wis. 2d at 301. We accepted review.

---

[3] It should be noted that Tate's probation was revoked on July 26, 1999, which was before he filed his direct appeal on November 15 of that same year.

## II. STANDARD OF REVIEW

¶ 15. Certiorari review of a probation revocation order by the Department of Administration, Division of Hearings and Appeals ("the Department"), "is limited to four inquiries: (1) whether the Department acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the Department might reasonably make the determination that it did." *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 628–29, 579 N.W.2d 698 (1998). *See also Van Ermen v. Dep't of Health & Soc. Servs.,* 84 Wis. 2d 57, 63, 267 N.W.2d 17 (1978).

¶ 16. This case requires an application of the second inquiry—whether the Department acted according to law—which is a question of law that we review de novo, without deference to the conclusions of the Department, the circuit court, or the court of appeals. *See Warren,* 219 Wis. 2d at 629.

## III. THE PRIVILEGE AGAINST SELF-INCRIMINATION

¶ 17. The self-incrimination clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be compelled in any criminal case to be a witness against himself."[4] Because the Fifth

---

[4] The Fifth Amendment's self-incrimination clause is applicable to the states through the Fourteenth Amendment. *Withrow v. Williams,* 507 U.S. 680, 688 (1993) (citing *Malloy v.*

Amendment "speaks of compulsion," *United States v. Monia,* 317 U.S. 424, 427 (1943), the United States Supreme Court "has insisted that the 'constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony.' " *McKune v. Lile,* 536 U.S. 24, 122 S. Ct. 2017, 2026 (2002) (quoting *United States v. Washington,* 431 U.S. 181, 188 (1977)). "It is well settled that the government need not make the exercise of the Fifth Amendment cost free."[5] *Id.* at 41, 122 S. Ct. at 2029. The Department now concedes that the "cost" at issue here—probation revocation, the loss of conditional liberty—constitutes compulsion for purposes of the Fifth Amendment.

¶ 18. The Department also now concedes that compelling a probationer to admit to the crime of conviction before the time for a direct appeal has expired or an appeal has been denied is self-incriminatory within the meaning of the Fifth Amendment. It has been established generally that the Fifth Amendment privilege extends to those already convicted of a crime, and even to those who are in prison or

*Hogan,* 378 U.S. 1 (1964)). Independently, Article I, Section 8 (1) of the Wisconsin Constitution provides that no person "may be compelled in any criminal case to be a witness against himself or herself."

[5] While *McKune* is a plurality opinion, Justice O'Connor's concurrence is in agreement with this point of law. *See McKune v. Lile,* 536 U.S. 24, 122 S. Ct. 2017, 2033 (2002) (O'Connor, J., concurring) ("The text of the Fifth Amendment does not prohibit all penalties levied in response to a person's refusal to incriminate himself."); *see also id.* (O'Connor, J., concurring) ("Not all pressure necessarily 'compel[s]' incriminating statements .... [S]ome penalties are so great as to 'compe[l]' such testimony, while others do not rise to that level.").

on probation when the incriminating statements are made. *Id.* at 36, 122 S. Ct. 2017, 2026 ("[t]he privilege against self-incrimination does not terminate at the jailhouse door"); *Minnesota v. Murphy,* 465 U.S. 420, 438 (1984) ("Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."); *State v. Evans,* 77 Wis. 2d 225, 234, 252 N.W.2d 664 (1976) (probationer cannot be revoked for invoking his privilege against self-incrimination absent a grant of immunity); *State v. Thompson,* 142 Wis. 2d 821, 832, 419 N.W.2d 564 (Ct. App. 1987) (probationer's compelled admissions may not be used against him for any evidentiary purpose in a pending or subsequent criminal prosecution).

¶ 19. More specifically, where the claimed self-incrimination pertains to the crime for which the defendant has already been convicted, we have held that "the Fifth Amendment privilege against self-incrimination extends beyond sentencing as long as a defendant has a real and appreciable fear of further incrimination." *State v. Marks,* 194 Wis. 2d 79, 95, 533 N.W.2d 730 (1995). Such is the case "where an appeal is pending, before an appeal as of right or plea withdrawal has expired, or where the defendant intends to or is in the process of moving to modify his or her sentence and can show an appreciable chance of success."[6] *Id.* at 95–96.

---

[6] However, where there is "no threat of any new criminal consequences" from a compelled admission of guilt to the crime of conviction during sex offender treatment, there is no Fifth Amendment violation. *State v. Carrizales,* 191 Wis. 2d 85, 92, 528 N.W.2d 29 (Ct. App. 1995). *See also Minnesota v. Murphy,* 465 U.S. 420, 435 n.7 (1984) (distinguishing compelled admis-

¶ 20. In *Evans,* this court first acknowledged that persons on probation remain protected by the Fifth Amendment privilege against self-incrimination. *Evans,* 77 Wis. 2d at 234. We held that compelled admissions about particular instances of criminal activity by a probationer given in response to questions by a probation agent or at a probation revocation hearing are inadmissible against the probationer in subsequent criminal proceedings.[7] *Id.* at 235–36. We created a rule of use and derivative use immunity for this situation,[8] and required that the probationer be advised that his otherwise self-incriminating statements are "inadmissible against the probationer or parolee during subsequent proceedings on related criminal charges." *Id.* at 235. Relying on the United States Supreme Court's decisions in *Baxter v. Palmigiano,* 425 U.S. 308 (1976), and *Lefkowitz v. Turley,* 414 U.S. 70 (1973), and *Kastigar v. United States,* 406 U.S. 441 (1972), we held that

sions of guilt that "posed no realistic threat of incrimination in a separate criminal proceeding").

[7] We noted in *Evans* that the holding applied to parolees as well as probationers. *State v. Evans,* 77 Wis. 2d 225, 228 n.1, 252 N.W.2d 664 (1977).

[8] "Immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege . . . . It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Kastigar v. United States,* 406 U.S. 441, 453 (1972). "Use and derivative use immunity permits prosecution for the crimes if the prosecuting agency does not offer the immunized testimony and establishes that the evidence offered is not derived from the immunized testimony." *State v. J.H.S.,* 90 Wis. 2d 613, 617, 280 N.W.2d 356 (Ct. App. 1979).

the state may compel a probationer to answer self-incriminating questions from his probation or parole agent, or suffer the consequence of revocation for refusing to do so, only "if he is protected by a grant of immunity that renders the compelled testimony inadmissible against the [probationer] in a criminal prosecution." *Evans,* 77 Wis. 2d at 235–36.

■

¶ 21. We said in *Evans* that the immunity rule would not apply to use of the probationer's self-incriminating statements to rebut or impeach "clearly inconsistent" later testimony by the probationer in subsequent criminal proceedings. *Evans,* 77 Wis. 2d at 235–36. The court of appeals, however, has since extended the *Evans* immunity rule to protect against the use of compelled self-incriminating statements for impeachment or rebuttal purposes. *State v. Thompson,* 142 Wis. 2d 821, 825, 419 N.W.2d 564 (Ct. App. 1987). *Thompson's* extension of *Evans* in this regard was mandated by several decisions of the United States Supreme Court subsequent to *Evans. See Thompson,* 142 Wis. 2d at 831 (citing *Minnesota v. Murphy,* 465 U.S. 420, 435 (1984) (if a probationer is required to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent, his statement cannot be used for any evidentiary purpose in a criminal prosecution); *New Jersey v. Portash,* 440 U.S. 450, 459 (1979) (defendant's compelled statements "may not be put to any use whatever against him in a criminal trial"); *Mincey v. Arizona,* 437 U.S. 385, 398 (1978) ("*any* criminal trial use against a defendant of his *involuntary* statement is a violation of due process of law")). We agree with the court of appeals' conclusion in *Thompson* that these post-*Evans* decisions of the United States Supreme Court require

expansion of the *Evans* immunity rule to protect against impeachment or rebuttal use of compelled self-incriminating statements in this context.[9]

██

¶ 22. We adopt the *Evans* immunity rule, as expanded by *Thompson,* for use in this situation.[10] In this case, Tate's right to appeal had not yet lapsed at the time he was required to admit, during sex offender treatment, to the crime of which he was convicted. The DOC had required him to sign a release allowing all of his statements during treatment to be used in "any court proceeding." Future criminal proceedings were possible in his case, as well as the potential for a perjury prosecution arising out of his trial testimony. The price of remaining silent was probation revocation. Accordingly, the admissions demanded of him by his treatment program were both self-incriminating and compulsory. Revocation of Tate's probation for refusing to admit his crime of conviction under these circumstances violated his Fifth Amendment right against self-incrimination.

---

[9] We have recently noted that "[a]ll state courts, of course, are bound by the decisions of the United States Supreme Court on matters of federal law" because "the Supremacy Clause of the United States Constitution governs the outcome of any direct conflict between state and federal supreme court precedent on a matter of federal law." *State v. Jennings,* 2002 WI 44, ¶ 18, 252 Wis. 2d 228, 647 N.W.2d 142.

[10] The parties and the amicus disagree about whether immunity should extend to admissions made during treatment regarding uncharged conduct, and whether immunity should be required where the probationer pleaded guilty or no contest. We note these issues but do not decide them, as they are not implicated by the facts of this case. Tate was convicted after a jury trial, not a guilty or no-contest plea. The admissions required of him in treatment pertained to the crime of conviction, not uncharged conduct.

## IV. WAIVER

¶ 23. Although the court of appeals held that a probationer in Tate's position cannot be revoked for refusing to admit to the crime of conviction, it nevertheless refused to grant Tate any relief, concluding that he had waived any Fifth Amendment challenge to his revocation by failing to appeal the circuit court's denial of his motion to modify the conditions of his probation. The Department concedes, and we agree, that this conclusion is insupportable.

¶ 24. Tate was terminated from the sex offender treatment program on April 13, 1999. He filed his motion to modify the conditions of his probation to delay his sex offender treatment just six days later, on April 19, 1999. He did not receive a decision from the circuit court until June 18, 1999.

¶ 25. In the meantime, on May 4, 1999, Tate was notified of the DOC's intention to revoke his probation. The final revocation hearing was scheduled for July 1, 1999. Accordingly, by the time the circuit court denied Tate's motion to delay treatment, revocation proceedings were already well under way and the final hearing was less than two weeks away. An appeal of the circuit court's denial of his motion to delay treatment would not have halted the ongoing revocation proceedings; the failure to appeal that order did not eliminate the availability of the remedy of certiorari review once revocation occurred. The court of appeals' waiver rule creates a strange procedural anomaly in which a probationer must seek modification, in the circuit and appellate courts, of any condition of probation that he is alleged to have violated in order to avoid waiving the right to argue against revocation based upon that

violation. And the probationer is required, under such a rule, to pursue the modification in the circuit and appellate courts while simultaneously undergoing revocation and pursuing certiorari review once revoked.

¶ 26. The court of appeals cited no authority for its conclusion on waiver, and the parties agree that there is none. We note that Tate did exactly what the defendant in *Evans* did—he contested the Department's revocation of his probation by filing a petition for a writ of certiorari in the circuit court and then appealed the circuit court's denial of his petition. *See Evans*, 77 Wis. 2d at 227–230. We did not require in *Evans* that the defendant first seek relief from the conditions of his probation in the circuit and appellate courts before his constitutional challenge to his revocation would be entertained. We decline to impose such a requirement now.

## V. CONCLUSION

¶ 27. The constitutional principles underlying our decision in *Evans* also apply to a probationer who invokes the Fifth Amendment privilege during court-ordered sex offender treatment in refusing to admit his crime of conviction, and we extend the *Evans* immunity rule to this situation. We also reaffirm the principle set forth in *Thompson* barring the use of any such compelled self-incriminating statements for impeachment or rebuttal. A probationer who is revoked for refusing, during court-ordered sex offender treatment, and before the time for a direct appeal has expired or an appeal has been denied, to admit to the crime of conviction has suffered a violation of his Fifth Amendment privilege. An immunity rule mirroring the one adopted in *Evans,* as modified by *Thompson,* allows the

DOC to seek such admissions as a part of sex offender treatment without violating the probationer's privilege against self-incrimination.

¶ 28. The revocation of Tate's probation must be and hereby is reversed, because it was premised on a legitimate assertion of the Fifth Amendment privilege against self-incrimination, and because Tate was not afforded immunity co-extensive with the privilege.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.