STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronnie L. PEEBLES, Defendant-Appellant.

Court of Appeals

*No. 2009AP3111–CR. Submitted on briefs August 24, 2010.
—Decided October 19, 2010.*

2010 WI App 156

(Also reported in 792 N.W.2d 212.)

244

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne L. Hagopian*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Ronnie Peebles appeals a judgment of conviction for first-degree sexual assault of a child and an order denying his postconviction motion. Peebles argues his trial counsel was ineffective for failing to object, at Peebles' sentencing after revocation, to consideration of several admissions by Peebles, including that he had committed numerous prior sexual assaults. Peebles contends he was compelled to give the incriminating statements during counseling as a condition of his probation. He also asserts the statements were protected by the social worker-client privilege. We agree that Peebles was compelled to give incriminating statements. We therefore remand for resentencing before a new judge and without consideration of the compelled statements.[1]

---

[1] Because we conclude the statements were inadmissible pursuant to Peebles' Fifth Amendment privilege, we do not

## BACKGROUND

¶ 2.  In 2005, Peebles pled no contest to one count of first-degree sexual assault of a child. The State agreed to recommend eight years' imprisonment, consisting of four years' confinement and four years' extended supervision, while Peebles would be free to argue the sentence. However, the State further agreed to abide by the presentence investigator's recommendation if county jail time was recommended. That did occur, and the State honored the agreement at sentencing. The court withheld sentence and placed Peebles on probation for five years, with the condition he serve one year in the county jail. The court further ordered "Sex Counseling/register/be compliant with Sex Offender Program."

¶ 3.  Peebles subsequently met with his probation agent and signed the Rules of Community Supervision and the Standard Sex Offender Rules. Both forms warned Peebles, "Your probation . . . may be revoked if you do not comply with any of your court-ordered conditions or if you violate any of the following rules." The community supervision rules included the following requirements:

> You shall make every effort to accept the opportunities and counseling offered by supervision.
>
> You shall provide true and correct information verbally and in writing in response to inquiries by the agent.
>
> You shall make yourself available for searches or tests ordered by your agent . . . .

---

reach his argument based on the statutory social worker-client privilege. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (cases should be decided on the narrowest possible grounds).

You shall pay fees for the polygraph (lie detector) examination process as directed by your agent in accordance with [administrative code].

You shall enter into a sex offender treatment program as directed by your agent.

You shall enter into any treatment program as deemed appropriate by your agent and you shall successfully complete the program.

You shall abide by all the standard sex offender rules . . . .

Further, the sex offender rules included the following condition:

You shall fully cooperate with, participate in, and successfully complete all evaluations, counseling, and treatment as required by your agent, including but not limited to sex offender programming. "Successful completion" shall be determined by your agent and treatment provider(s). If sex offender treatment is required you must attend and account for the details of the behavior committed in your conviction offense(s). Failure to admit the offense(s) or provide a detailed description will be considered a violation of your supervision and may result in disciplinary action including the recommendation for revocation of your supervision. Information revealed in treatment concerning your conviction offense(s) cannot be used against you in criminal proceedings.

¶ 4. Peebles later testified he understood that if he did not follow the rules of supervision, including participation in sex offender treatment, he could face incarceration, an alternative to revocation, or revocation from supervision. He participated in sex offender treatment from October 2005 to October 2008. In addition to discussing the offense for which he was

248

convicted, Peebles was expected to admit "all sexual behaviors (number of times, number of victims)," to give "details of past hidden crimes," and to complete a "sexual history time line." Peebles testified he believed that if he did not talk about other sex offenses in treatment he "wouldn't be cooperating with my counselor and I'd be revoked."

¶ 5. As part of treatment, Peebles was subjected to a polygraph examination in which he was asked about other offenses. According to Peebles' probation agent, probationers who are supervised as sex offenders may be "compelled" to take a polygraph as a condition of supervision so the agent can determine "if they're telling us the truth, if they're abiding by their rules." Peebles testified he thought he could be revoked if he refused to take a polygraph.[2]

¶ 6. Peebles' probation was ultimately revoked based on four rules violations, after Peebles waived his revocation hearing.[3] The agent's revocation summary,

---

[2] Peebles attached several treatment summaries to his postconviction motion. In one dated June 30, 2006, the treatment provider wrote "no" next to the requirement that the client "fully admits to all sexual behaviors (number of times, number of victims) . . . [and] completes a sexual history time line." Next to the requirement, is handwritten: "via the polygraph . . .[.]" (Ellipsis in original.)

In a subsequent treatment summary, dated December 19, 2006, the same requirement is then checked off. Under "additional comments," the provider wrote: "What brought Mr. Peebles' forthcomingness [sic] was partially the fear of the polygraph . . . indicates he wants to make changes . . . indicates he has seen people go back to prison because of lack of honesty and being invested in making the changes needed[.]" (Ellipses in original.)

[3] The revocation summary indicates all four violations occurred in September and October of 2008. Regarding the first,

which the agent provided to the circuit court, repeated various admissions made by Peebles in sex offender counseling. The agent later testified that the admissions were conveyed from Peebles' sex offender treatment counselor.

¶ 7. The revocation summary indicated Peebles admitted in treatment that he had in excess of twenty child victims throughout his adult life and that he is a "pedophile." Among other things, it also reported that Peebles admitted viewing pornography and consuming alcohol while on probation. Those admissions were made to the polygraph examiner immediately before a polygraph examination. Additionally, the summary included a Plotkin Analysis, which is a table setting forth three "functional objectives" and requiring the agent to insert the "relevant factors" for each. The agent relied on Peebles' admissions in part for one of the three categories, and entirely for another. For all three, the agent marked the "necessary response intensity" as high.[4]

¶ 8. At Peebles' sentencing after revocation, the court observed that Peebles' admissions in treatment, particularly to being a pedophile and having over

Peebles volunteered to work at his church in the proximity of children but, because he disclosed his sex offender status, the church declined his services. The second violation was Peebles' admission that he went to his daughter's middle school, but never entered the building. The third violation was Peebles' failure to report to his agent that he requested law enforcement assistance to deal with his violent son. Finally, Peebles admitted he attended story time at a library with his girlfriend and a child, and police found a library receipt in his wallet indicating he had checked out children's books on multiple occasions.

[4] The form requires the agent to select from low, medium, or high.

twenty victims, were "significantly new information" that the court intended to rely upon. The court further indicated it was "shaken to [its] roots" by the admissions because at the original sentencing the information was that Peebles "had no prior record of any type of aberrant sexual behavior." The court imposed a forty-year sentence consisting of twenty-five years' initial confinement and fifteen years' extended supervision.

¶ 9. Peebles argued in a postconviction motion that the court's consideration at sentencing of admissions made in treatment violated his right against self-incrimination and the statutory privilege for patient-social worker communications. He further argued trial counsel was ineffective for failing to challenge the use of those statements. The circuit court denied the motion, observing that Peebles could have refused to cooperate with his probation and counseling requirements, including the polygraph. Peebles now appeals, renewing the arguments presented in his postconviction motion.

## DISCUSSION

¶ 10. Both the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution provide that a person may not be compelled in any criminal case to be a witness against himself or herself. "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.' " *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (quoting *Culombe v.*

*Connecticut*, 367 U.S. 568, 581–82 (1961)). Further, the "privilege is 'as broad as the mischief against which it seeks to guard,' and . . . is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.' " *Id.* at 467 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892), *overruled in part by Kastigar v. U.S.*, 406 U.S. 441 (1972); *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).

¶ 11.   Peebles argues three cases, taken together, establish he was unlawfully compelled to incriminate himself. We summarize each in turn. We observe at the outset, however, that there are two general types of Fifth Amendment cases:   in one, the person remains silent in the face of attempted compulsion and faces some penalty; in the other, the person gives an incriminating statement and later seeks to exclude it from a criminal proceeding because it was compelled. It is helpful to understand this distinction and bear it in mind.

¶ 12.   In *State v. Evans*, 77 Wis. 2d 225, 228, 252 N.W.2d 664 (1977), the defendant pled guilty and was placed on probation. While on supervision, he was charged with committing new crimes. *Id.* On the advice of counsel, he refused to inform his probation agent where he was on the days of the alleged crimes. *Id.* at 228–29. At a revocation hearing for his refusal to speak, the defendant again refused to account for his whereabouts. *Id.* at 229. The department revoked his probation and he was returned to court for sentencing. *Id.* at 230.

¶ 13.   The supreme court recognized that the privilege against self-incrimination extends to persons on probation, even though they enjoy only a "condi-

tional liberty." *Id.* at 230, 234–35. The court concluded that a probationer's answers to an agent's questions prompted by accusations of criminal activity are "compelled," because a refusal to speak may be grounds for revocation. *Id.* at 235–36. Accordingly, the court held that such admissions are inadmissible against him or her in subsequent criminal proceedings. *Id.*

¶ 14. The court, however, also recognized the defendant in *Evans* had violated the most central condition of probation. Discussing the theory of probation, it observed, "The absolute obligation to keep one's probation agent informed of one's whereabouts and activities when requested is the very essence of the system of probation." *Id.* at 231. Therefore, the court created a rule of immunity for probationers. Under that rule, the State may compel the probationer to answer self-incriminating questions for the agent, or face the potential of revocation, only "if he [or she] is protected by a grant of immunity that renders the compelled testimony inadmissible against [him or her] in a criminal prosecution." *Id.* at 235; *see State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 20, 257 Wis. 2d 40, 654 N.W.2d 438 (recognizing that holding).

¶ 15. In *Thompson,* Peebles' second cited case, the defendant was on probation when he was charged with armed robbery and first-degree murder.[5] *See State v. Thompson*, 142 Wis. 2d 821, 825–26, 419 N.W.2d 564 (Ct. App. 1987), *partial abrogation recognized by State v. Mark*, 2005 WI App 62, ¶ 36 n.13, 280 Wis. 2d 436, 701 N.W.2d 598 (harmless error rule applies). While in custody on the new charges, Thompson initially re-

---

[5] Because the appellate case arose from his subsequent criminal conviction on new charges, we do not know whether Thompson's probation resulted from a plea or a trial.

fused, on counsel's advice, to account for his whereabouts or activities on the day of the robbery. *Id.* at 826. Thompson's probation agent then served him with notice of a probation revocation hearing and interviewed him while still in custody. *Id.* at 826–27. The State later used Thompson's statements from that interview at the trial on the new charges. *Id.* at 827.

¶ 16.  Thompson argued his answers to the probation agent were coerced and therefore inadmissible. We agreed, observing, "It is not disputed that the price of Thompson's silence was revocation of his probation. . . . *Evans* establishes that in Wisconsin a probationer's answers to a probation agent's question prompted by accusations of criminal activity are 'compelled.' " *Id.* at 829–30. Significantly, we also recognized that in such cases the privilege is self-executing:

> *Murphy* establishes that if a probationer is required to choose between giving answers which will incriminate him in a pending or subsequent criminal prosecution and losing his conditional liberty as a price for exercising his [F]ifth [A]mendment right to remain silent, the [S]tate may not use his answers for any evidentiary purpose in the criminal prosecution. It is not necessary that the probationer exercise his [F]ifth [A]mendment right to remain silent; it is self-executing.

*Id.* at 832 (citing *Minnesota v. Murphy*, 465 U.S. 420, 435 (1984)). Like in *Evans*, however, we recognized the State may compel probationers to answer questions and then use those responses, or refusals to answer, as grounds for revocation; but, the probationer must first be granted immunity prohibiting the information's use in any criminal proceedings. *Id.* at 832, n.7; *Evans*, 77 Wis. 2d at 228, 231, 236.

¶ 17.  The third case Peebles relies on is *Tate*, 257 Wis. 2d 40, ¶ 4, which applied the *Evans* immunity rule

in the context of mandated sex offender counseling. Tate was convicted of sexual assault after a jury trial at which he denied committing the offense. *Id.*, ¶¶ 2, 5. He was placed on probation and ordered into sex offender treatment. *Id.* As part of that treatment, he was required to admit the offense. *Id.*, ¶¶ 2, 8–9. Tate refused, asserting his Fifth Amendment privilege. *Id.* He was terminated from the program and, consequently, revoked from probation. *Id.*, ¶¶ 2, 9–11.

¶ 18.   The supreme court observed, "It has been established generally that the Fifth Amendment privilege extends to those already convicted of a crime, and even to those who are in prison or on probation when the incriminating statements are made." *Id.*, ¶ 18 (citing *McKune v. Lile*, 536 U.S. 24, 36 (2002); *Murphy*, 465 U.S. at 438; *Evans*, 77 Wis. 2d at 234; *Thompson*, 142 Wis. 2d at 832). Turning to the merits, the court stated:

> In this case, Tate's right to appeal had not yet lapsed at the time he was required to admit, during sex offender treatment, to the crime of which he was convicted. The DOC had required him to sign a release allowing all of his statements during treatment to be used in "any court proceeding." Future criminal proceedings were possible in his case, as well as the potential for a perjury prosecution arising out of his trial testimony. The price of remaining silent was probation revocation. Accordingly, the admissions demanded of him by his treatment program were both self-incriminating and compulsory.

*Id.*, ¶ 22.[6] The court held that "a defendant in this situation cannot be subjected to probation revocation for refusing to admit to the crime of conviction, unless

---

[6] Similar to the defendant in *State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 22, 257 Wis. 2d 40, 654 N.W.2d 438, Peebles signed releases permitting his counselors to disclose confidential medical records to "DOC/DCC/Agent of Record."

255

he is first offered the protection of use and derivative use immunity for what are otherwise compulsory self-incriminatory statements." *Id.*, ¶ 4.

¶ 19.   In summary, Peebles' three cases give rise to the following four general rules:   First, if a probationer refuses to incriminate himself or herself as required by a condition of supervision, he or she cannot be automatically revoked on that ground; second, if the probationer refuses despite a grant of immunity, his or her probation may be revoked on that basis; third, any incriminating statements the probationer provides under the grant of immunity may be used as justification for revocation, but not used in any criminal proceedings;[7] and fourth, if a probationer is compelled by way of probation rules to incriminate himself or herself, the resulting statements may not be used in any criminal proceeding.

¶ 20.   We now apply the foregoing principles to the present case. Peebles' situation falls under the second of the two categories of cases we described at the outset; i.e., rather than invoking the privilege, he provided statements and now seeks to exclude them in a subsequent criminal proceeding, arguing they were compelled.[8] Both the circuit court and Peebles' probation agent ordered Peebles to attend sex offender counsel-

---

[7] "Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding." *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984).

[8] As a preliminary matter, then, we dispense with the State's argument that Peebles was not revoked based on his compelled statements. Because Peebles is not challenging his revocation, the reasons for revocation are irrelevant.

256

ing. His supervision rules required that he be truthful, that he submit to lie detector tests, and that he fully cooperate with and successfully complete sex offender counseling. Both of the supervision rules documents explicitly informed him he could be revoked for failure to comply with any conditions. Moreover, Peebles then gave his statements, at least in part, because he was required to take lie detector tests. Therefore, as Peebles' trio of cases makes clear, his statements were compelled for purposes of the Fifth Amendment.

¶ 21.  Because Peebles' statements were then used against him at sentencing to increase his prison sentence, they were incriminating and should have been excluded. *See Estelle*, 451 U.S. at 462–63 (compelled statement to psychologist may not be used to determine punishment after conviction); *see also State v. Brimer*, 2010 WI App 57, 324 Wis. 2d 408, 781 N.W.2d 726 (admissions to parole officer may be used in a reconfinement hearing because, in contrast to a sentencing hearing, it is not a criminal proceeding); *Scales v. State*, 64 Wis. 2d 485, 496, 219 N.W.2d 286 (1974) (defendant may invoke the Fifth Amendment privilege at sentencing). The State argues Peebles' admissions to the other sexual assaults were not incriminating because there was no realistic threat that he would be prosecuted for them. While this argument also ignores that the statute of limitations may not have run on those cases,[9] the State is again off-track. Whether statements might be incriminating in a future criminal proceeding is an irrelevant inquiry in this, the second type of Fifth Amendment case we described earlier. Unlike the first

[9] As Peebles emphasizes, there is no statute of limitations for first-degree sexual assault of a child, and a charge of second-degree sexual assault may generally be brought any time before the victim turns forty-five. *See* Wis. Stat. § 939.74(2)(a)-(b).

type of case, here Peebles sought not to invoke his right to silence, but to exclude statements he already made; statements that were, in fact, incriminating in the criminal proceeding from which he sought their exclusion.[10]

¶ 22.   The State also argues Peebles' statements were not compelled, because he could have just refused to comply with probation at numerous times. We reject this argument on two independent grounds. First, it ignores the well-established legal precedent created by *Evans, Thompson,* and *Tate.* Those cases hold that a probationer's statements are compelled if he or she must choose between providing them or jeopardizing his or her conditional liberty by remaining silent. *See, e.g., Thompson,* 142 Wis. 2d at 832; *see also Murphy,* 465 U.S. at 436. We are bound by the holdings in those cases. *See Cook v. Cook,* 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

¶ 23.   Second, in *Evans,* 77 Wis. 2d at 228, where our supreme court first recognized probationers' continued Fifth Amendment right, the defendant was placed on probation following a voluntary guilty plea. The court did not deny the probationer's right there by concluding he waived the privilege by his plea, even though the defendant subsequently violated the central

---

[10] Regardless, even if this were the first type of case and Peebles had invoked the privilege rather than provide statements while on probation, his withheld statements would be incriminating if provided, and therefore privileged, because they could later be used against him at sentencing after revocation in the present case. It does not matter whether he could also be separately prosecuted based on his statements.

258

rule applicable to every probationer.[11] Thus, here, even had Peebles and the State explicitly agreed to probation, and we assumed Peebles knew he would be required to answer incriminating questions in treatment, his plea would not have effected a waiver of his Fifth Amendment rights.

¶ 24. The State nonetheless cites *State v. Carrizales*, 191 Wis. 2d 85, 96, 528 N.W.2d 29 (Ct. App. 1995), where we commented, "While Carrizales may suffer a loss of liberty because of his refusal to comply with his conditions of probation, this is the bargain to which he agreed."[12] There, the issue was whether Carrizales could be compelled to admit his conviction offense in treatment. The State had agreed to recommend probation, with the plea agreement specifically requiring "counseling as deemed appropriate by . . . agent." *Id.* at 92. Here, in contrast, Peebles' plea agreement was that the State would recommend substantial imprisonment —not probation. Thus, even if the case law permitted it, there could be no argument that Peebles bargained for the probation, sex offender treatment, and concomitant rules, thereby waiving his Fifth Amendment privilege while on probation.

---

[11] To the extent we may impart to defendants knowledge of probation requirements, we might assume the defendant there would have known, at the time of entering his plea, of the universal requirement that he truthfully account for his whereabouts while on probation.

[12] The State does not quote *Carrizales* nor develop any argument pertaining to the quote. *State v. Carrizales*, 191 Wis. 2d 95, 528 N.W.2d 29 (Ct. App. 1995). Rather, the State indicates, "Even if Peebles were told he would be revoked if he did not admit to prior crimes, that is the bargain he agreed to when he pled." The State then provides a "see" cite, and proceeds with an unrelated argument.

259

¶ 25. Moreover, the ultimate holding in *Carrizales*, 191 Wis. 2d at 89, 95, was that "where there is 'no threat of any new criminal consequences' from a compelled admission of guilt to the crime of conviction during sex offender treatment, there is no Fifth Amendment violation." *Tate*, 257 Wis. 2d 40, ¶ 19 n.6 (quoting *Carrizales*, 191 Wis. 2d at 92). The *Carrizales* case is distinguishable where, as here, a probationer's statements *can* be used against him or her in a subsequent criminal proceeding. *See State ex rel. Tate v. Schwarz*, 2001 WI App 131, ¶ 16, 246 Wis. 2d 293, 630 N.W.2d 761, *rev'd on other grounds*, 257 Wis. 2d 40.

¶ 26. Additionally, unlike here, the *Carrizales* court was concerned with noncriminal probation proceedings, observing that there would be no Fifth Amendment violation if Carrizales's silence was used against him in a revocation hearing.[13] *Carrizales*, 191 Wis. 2d at 97. Further, the court prefaced the quoted "bargained for" statement with the observation: "Carrizales is being asked to admit that he committed a crime in which he has already entered a no contest plea." *Id.* at 96. This demonstrates the court's conclusion that Carrizales's refusal to admit the crime of conviction was not privileged because, even if revoked, an admission would not have been incriminating—even at a sentencing after revocation—because he effectively admitted the crime when he entered his plea. The court did not

---

[13] Taken out of context, this observation might appear to conflict with the prior and subsequent holdings cited in this decision, which permit the use of silence or incriminating statements against a probationer at a revocation hearing only when the probationer was granted immunity. However, since Carrizales already pled no contest, an admission to the crime of conviction, as opposed to other conduct, would not be incriminating.

base its holding on the "bargain to which he agreed" comment;[14] instead, that added comment further illustrated its rationale. While here Peebles' plea could similarly constitute an admission to the charged crime, it cannot be viewed as an admission of any other conduct.

██ ██

¶ 27. Procedurally, this case is before us on an ineffective assistance of counsel claim. Thus, Peebles must demonstrate both deficient performance and prejudice. *See State v. Thiel*, 2003 WI 111, ¶ 18, 264 Wis. 2d 571, 665 N.W.2d 305. Because they were inadmissible, counsel performed deficiently by failing to move for exclusion of the compelled, incriminating statements. Prejudice, a reasonable probability of a different outcome, is present because the circuit court acknowledged it relied significantly on Peebles' admissions when determining the sentence. Indeed, the State does not argue that admission of the statements, if improper, was nonprejudicial.

¶ 28. Further, we reject the State's assertion, unsupported by legal authority, that counsel was not ineffective because there was no existing case precisely on point.[15] The Fifth Amendment privilege's application to probationers is not an unsettled question of the law, and Peebles' argument is not so novel that counsel should not be expected to have made it. Counsel acknowledged he was "extremely concerned" about the

---

[14] Indeed, the comment appears well after the court's holding, in a section distinguishing cases cited by the probationer. Thus, it might arguably be viewed as nonessential dicta.

[15] We need not consider arguments unsupported by legal authority. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994).

information being used at sentencing, but concluded there were no grounds for excluding the statements. Reasonably competent counsel would have known, or discovered, that the Fifth Amendment privilege applies to probationers, including those required to provide admissions in sex offender counseling.

*By the Court.*—Judgment and order reversed and cause remanded with directions.