STATE of Wisconsin EX REL. Ronald McELVANEY,
Petitioner-Appellant,†

v.

David H. SCHWARZ, Administrator, Division of
Hearings and Appeals, Respondent-Respondent.

Court of Appeals

*No. 2007AP415. Submitted on briefs February 28, 2008.
—Decided June 4, 2008.*

2008 WI App 102

(Also reported in 756 N.W.2d 441.)

† Petition fo review denied 8/18/08.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John P. Tedesco*, assistant state public defender of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J.    Ronald McElvaney appeals from an order affirming a Department of Corrections Divi-

sion of Hearings and Appeals decision that revoked McElvaney's extended supervision. He claims that the DOC improperly revoked his extended supervision based on conduct that occurred during his probation period. McElvaney asserts that his term of extended supervision, which was part of a bifurcated sentence that was originally imposed and stayed, was a "separate term of supervision" from the term of probation that preceded his incarceration on the bifurcated sentence. We disagree and affirm the order of the circuit court.

## BACKGROUND

¶ 2.   The facts are brief and undisputed. In May 2000, McElvaney was convicted on one count of child abuse, contrary to Wis. Stat. § 948.03(2)(b) (2005–06).[1] The circuit court sentenced him to one year in prison and three years of extended supervision, but stayed the sentence and ordered him to serve five years of probation with conditions. On May 1, 2003, the DOC revoked McElvaney's probation for multiple violations, including the fact that he had absconded from November 26, 2002 until February 19, 2003. However, because McElvaney was entitled to substantial sentence credit while on probation hold, he was released to extended supervision on May 27, 2003.[2]

¶ 3.   On May 10, 2005, the State moved to revoke McElvaney's extended supervision, alleging that at some time between August 2001 and February 2002, McElvaney had sexually assaulted a child. Following a

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version.

[2] The record indicates that McElvaney was in custody on several occasions after his release due to unrelated child support commitments and a battery charge.

hearing on November 30, 2005, the administrative law judge (ALJ) ordered that McElvaney's extended supervision be revoked and that he be returned to court for a determination of his confinement time. McElvaney appealed to the Division of Hearings and Appeals, which affirmed the ALJ. In a decision issued February 17, 2006, Division Administrator David Schwarz opined that McElvaney's arguments for overturning the ALJ were unpersuasive and that the record fully supported the order to revoke his extended supervision.

¶ 4.  McElvaney petitioned the circuit court for a writ of certiorari and order to vacate on grounds that the revocation decision was unreasonable, oppressive and arbitrary and that he had not received a full and fair revocation hearing. The court affirmed Schwarz's decision upholding the revocation. McElvaney appeals.

## DISCUSSION

¶ 5.  McElvaney presents the sole issue on appeal as "whether a person who initially serves a term of probation which is ultimately revoked, and following revocation serves a bifurcated prison term, can be revoked from that prison term's extended supervision component on the basis of a rules violation that occurred during the initial term of probation." He directs us to Wis. Stat. § 304.072(3), which states:

> [T]he department preserves jurisdiction over a probationer, parolee or person on extended supervision if it commences an investigation, issues a violation report or issues an apprehension request concerning an alleged violation prior to the expiration of the probationer's, parolee's or person's term of supervision.

McElvaney emphasizes the statute's reference to "term of supervision," asserting that his initial term of proba-

tion was distinct from the extended supervision portion of his bifurcated sentence. Because these were separate terms of supervision, his argument goes, the DOC did not retain jurisdiction to revoke his extended supervision for conduct that occurred during his term of probation.

¶ 6.    We begin by noting that we review the agency decision, not the decision of the circuit court; however, we benefit from the circuit court's analysis. *Beecher v. LIRC*, 2004 WI 88, ¶ 22, 273 Wis. 2d 136, 682 N.W.2d 29. Our review of a probation revocation order is limited to four inquiries: (1) whether the agency acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the agency might reasonably make the determination that it did. *See State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 15, 257 Wis. 2d 40, 654 N.W.2d 438.

¶ 7.    We apply one of three levels of deference to conclusions of law in agency decisions. *Beecher*, 273 Wis. 2d 136, ¶ 23. If the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to great weight. *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267 (1991). The second level of review provides that if the agency decision is very nearly one of first impression it is entitled to due weight. *Id.* at 413–14. The third level of review, the de novo standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the

agency and the agency lacks special expertise or experience in determining the question presented. *Id.* at 414. We have not located any line of decisions from the DOC demonstrating special expertise or experience interpreting the phrase "term of supervision" in WIS. STAT. § 304.072(3), and the DOC itself has not taken a position on the level of deference due its decision.

¶ 8. The fundamental question here is whether the DOC properly interpreted and applied the statutory phrase "term of supervision" when it revoked McElvaney's extended supervision. Because the issue requires the application of a statute to undisputed facts, together with the construal of recent case law, we proceed with our review de novo. *See Beecher,* 273 Wis. 2d 136, ¶ 26; *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995).

¶ 9. McElvaney contends that the DOC exceeded its jurisdiction and misinterpreted the language of WIS. STAT. § 304.072(3) when it held that his probation and his extended supervision were components of the same term of supervision. He asserts that probation and extended supervision are different in character and in treatment under the law. He observes that probation is authorized under WIS. STAT. ch. 973, titled "Sentencing." Where a sentence is imposed but stayed and the corresponding probation is subsequently revoked, the law states that the DOC must "order the probationer to prison, and the *term of the sentence shall begin* on the date the probationer enters the prison." WIS. STAT. § 973.10(2)(b) (emphasis added). In contrast, extended supervision exists under WIS. STAT. § 302.113, in the chapter titled "Prisons." When extended supervision is revoked, the law provides for a reconfinement hearing. *See* Sec. 302.113(9)(am).

131

¶ 10. McElvaney also offers several cases in support of the oft-cited adage that probation is not a sentence. *See, e.g., Prue v. State*, 63 Wis. 2d 109, 114, 216 N.W.2d 43 (1974); *State v. Gibbons*, 71 Wis. 2d 94, 97, 237 N.W.2d 33 (1976). His point appears to be that if probation is not a sentence, but extended supervision is, then they represent two different "terms of supervision." The State characterizes this as an attempt by McElvaney to distract from the true issue at hand. It points out that WIS. STAT. § 304.072(3) never uses the term "sentence," but instead speaks of "jurisdiction" and "supervision." The State asserts that resolution of this appeal does not require us to say whether probation is a sentence, but requires us to determine whether an initial period of probation "connects with a post-incarceration period of extended supervision in a way that makes the sequence of probation, incarceration, and extended supervision a 'term of supervision' " as contemplated by § 304.072(3). Nonetheless, because the concept underlying McElvaney's argument is that his probation was a discrete term of supervision that ended when he was revoked, we choose to address McElvaney's argument.

¶ 11. We begin with *State v. Booth*, 142 Wis. 2d 232, 418 N.W.2d 20 (Ct. App. 1987). There, Booth pled guilty to one charge of burglary. *Id.* at 234. At the sentencing hearing, the circuit court "withheld sentencing" and ordered three years of probation with conditions. *Id.* Booth violated the conditions on multiple occasions, yet revocation proceedings did not begin until nearly two years after the original conviction. *Id.* Three weeks after the DOC commenced its revocation proceedings, Booth moved to withdraw his guilty plea. *Id.* Because the threshold for withdrawing a guilty plea is lower prior to sentencing, the court had to determine

whether probation constituted sentencing under the circumstances. *Id.* at 234–35. Prior to sentencing, a court may allow a defendant to withdraw a guilty plea "where the defendant presents a fair and just reason for doing so, unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *Id.* at 235. In contrast, after sentencing, "the defendant must show that a manifest injustice would result if the withdrawal were not permitted." *Id.*

¶ 12.   We held that "the imposition of probation constitutes sentencing for purposes of determining which standard to apply to the consideration of a guilty plea withdrawal motion." *Id.* Although the *Booth* court limited its holding to the "purposes of the present case," *id.* at 237, it relied on principles that apply here as well. The *Booth* court cited with approval the American Bar Association's standards regarding sentencing, which treat probation as a sentence:   "[T]he term 'probation' means a sentence not involving confinement which imposes conditions and retains authority in the sentencing court to modify the conditions of the sentence or to resentence the offender if its conditions are violated." *Id.* at 236 (citing ABA, Sentencing Alternatives and Procedures, § 18–2.3(a), at 71 (2d ed. 1980)). The commentary to the standard explains:   "[S]uch dispositions, however denominated, should be considered 'sentences' in themselves rather than only as a provisional holding category or a temporary substitute for 'true' sentences of confinement. *Probation and similar dispositions are, and should be viewed as, sentences just like any other disposition following conviction."* *Booth,* 142 Wis. 2d at 236 (citing with emphasis added, ABA, Sentencing Alternatives and Procedures, § 18–2.3, at 80). We also observe that McElvaney's argument that his probation was not a sentence is

much weaker than Booth's, given that Booth's court withheld sentencing. Here the circuit court imposed a bifurcated sentence and stayed it before ordering probation.

¶ 13.  Ten years after *Booth*, we again took up the issue of whether probation is a sentence in *State v. Thompson*, 208 Wis. 2d 253, 559 N.W.2d 917 (Ct. App. 1997). We considered whether Wis. Stat. § 973.15(2) authorizes a court to impose a sentence consecutive to a previously imposed but stayed sentence where probation had not yet been revoked. *Thompson*, 208 Wis. 2d at 255. Section 973.15(2) provides that a "court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously." We concluded that the court could impose a consecutive sentence because it had not withheld sentencing when placing Thompson on probation:

> [Thompson] argues that the previous sentence is not actually *imposed* until probation is revoked. This assertion is incorrect. Thompson's sentence in the previous case was imposed at the time of sentencing. The trial court did not withhold sentencing, but rather stayed the sentence actually imposed and placed Thompson on probation. Revocation of probation is not required to actually *impose* the sentence. The revocation merely triggers the execution or implementation of the sentence.

*Thompson*, 208 Wis. 2d at 256–57 (citations and footnote omitted).

¶ 14.  In reaching this conclusion, we relied on Wis. Stat. § 973.09(1)(a), which states that a sentencing court "may withhold sentence or impose sentence under [Wis. Stat. §] 973.15 and stay its execution." We also

134

noted that the legislative history supported our interpretation. The 1981 amendment to § 973.15(2)(a) removed the language that a sentence could be consecutive to another sentence the defendant was "then serving," thereby allowing consecutive sentences where the first sentence had been imposed but was not presently being served. *Thompson*, 208 Wis. 2d at 257.[3]

¶ 15. It is clear that the context in which the question is presented drives the analysis. *See State v. Mentzel*, 218 Wis. 2d 734, 740, 581 N.W.2d 581 (Ct. App. 1998) (the meaning of the term "sentence" depends on the particular statute involved and the setting to which it applies). We conclude that for purposes of determining whether the DOC retained jurisdiction under Wis. Stat. § 304.072(3), specifically with regard to identifying a "term of supervision," probation, incarceration, and extended supervision are each a component of the sentence.

¶ 16. McElvaney also argues that the circuit court misapplied the law of *DOC v. Schwarz*, 2005 WI 34, 279 Wis. 2d 223, 693 N.W.2d 703. In that case, the defendant, Dowell, served confinement time and then was released on parole. *Id.*, ¶ 3. The DOC revoked his parole and he returned to prison. *Id.* Dowell was then released on parole again. *Id.*, ¶ 4. While he was out on parole, the DOC became aware of rules violations that occurred during Dowell's first period of parole. *Id.* The court held that Dowell's first parole period was the

_____

[3] The Judicial Council Committee Note relied upon in *State v. Thompson*, 208 Wis. 2d 253, 257, 559 N.W.2d 917 (Ct. App. 1997), explains that the statute was revised because the then-existing version "failed to achieve its apparent purpose of allowing consecutive sentencing in situations involving probation and parole revocations." *See* Judicial Council Committee Note, 1981, Wis. Stat. § 973.15(2).

same term of supervision as his second period of parole, holding that the phrase "term of supervision" applied to "all parole violations that occur before the offender's date of discharge from his or her entire sentence." *Id.*, ¶ 36.

¶ 17.   McElvaney argues that the holding should be limited to parole violations because the court's analysis hinged on "the interplay among several statutes related to parole." *See id.* We do not believe that such a limitation is required. As the State points out, the *Schwarz* court cast the issue more broadly when it stated, "This case turns on whether the phrase 'term of supervision' within WIS. STAT. § 304.072(3) allows the DOC to retain jurisdiction over a prisoner's entire sentence." *Schwarz*, 279 Wis. 2d 223, ¶ 11. It concluded that the statute evinced intent by the legislature to "preserve DOC jurisdiction until the offender's final date of discharge from his or her entire sentence." *Id.*, ¶ 30. Because the legislature did not distinguish among probationers, parolees, or persons on extended supervision in § 304.072(3), we will not manufacture such distinctions here.

¶ 18.   Once the court imposes probation, the defendant is in the custody of the DOC and is "subject . . . to the control of the department under conditions set by the court and rules and regulations established by the department for the supervision of probationers, parolees and persons on extended supervision." WIS. STAT. § 973.10(1). The statutes are intended to "enforce offender accountability" until "the expiration of the entire underlying sentence." *Schwarz*, 279 Wis. 2d 223, ¶ 21. Furthermore, the court in *Schwarz* turned to legislative drafting records for WIS. STAT. § 304.072(3), which stated in relevant part, "[t]he bill also provides a procedure for the department to preserve its *probation*

*or parole* jurisdiction by taking certain action prior to the expiration of a term of supervision." *Schwarz*, 279 Wis. 2d 223, ¶ 23 (emphasis added). By its very terms, § 304.072(3) applies equally to persons supervised on probation, on parole, and on extended supervision.

## CONCLUSION

¶ 19.    We conclude, consistent with *Schwarz*, that a term of supervision under Wis. Stat. § 304.072(3) includes the nonconfinement and confinement time arising from the same sentencing decision. We therefore affirm the circuit court order, which affirmed the agency decision to revoke McElvaney's extended supervision for violations that occurred during his initial period of probation.

*By the Court.*—Order affirmed.