PER CURIAM.
¶1 Keith Myers, pro se , appeals a circuit court order affirming the decision of the Administrator of the Department of Administration, Division of Hearings and Appeals (the Division). Myers sought certiorari review of the Division's revocation of his extended supervision. The circuit court denied relief. On appeal to this court, Myers argues: (1) the evidence does not support the revocation decision; (2) the Division's decision to revoke his supervision was arbitrary, oppressive, and unreasonable; and (3) the administrative procedure violated his right to due process. We reject his contentions and affirm.
Background
¶2 Myers served an eleven-year prison sentence and a consecutive jail sentence following a conviction in 2002 for possessing with intent to deliver marijuana and a conviction in 2003 for felony murder as a party to a crime with armed robbery as the underlying offense. On June 19, 2014, Myers was released from jail to serve a term of extended supervision. Myers met with an extended supervision agent in Milwaukee, Wisconsin on June 20, 2014. According to the agent, Myers said he wanted to move to Iowa but did not have enough money to finance the move. The Department of Corrections (DOC) approved his request to move to Iowa and required him to report to a parole agent in that state on Monday, June 23, 2014. On that date, Myers reported to an Iowa agent.
¶3 Two days earlier, someone robbed a branch of the U.S. Bank at 2537 West Wisconsin Avenue in Milwaukee. On the morning of Saturday, June 21, 2014, the robber approached a teller, and, according to police reports, presented a demand note that read: "[g]ive me all the money. Don't say nothing. I have an alarm with a bomb." The teller surrendered more than $ 9000 to the robber, who retrieved the demand note and fled on foot.
¶4 The teller described the suspect as an African-American male with a caramel complexion, twenty-five or twenty-six-years old, five feet, eight inches tall, and between 160 and 170 pounds. Surveillance video showed the robber with a hat and sunglasses at the service counter. Police recovered a palm print on the service counter in front of the station where the robber confronted the teller. Investigators determined in July 2014 that the palm print was Myers's. An investigating officer examined Myers's 2014 booking photograph and determined that Myers was a thirty-one year old African-American male with a medium complexion, that he was five feet, eight inches tall, and that he weighed 174 pounds. In the assessment of the officer, Myers resembled the suspect in the video.
¶5 In mid-July 2014, Myers reported as required to his Iowa parole agent. The agent searched him and found a bag of marijuana in his pocket. Myers was taken into custody and subsequently returned to Wisconsin.
¶6 In October 2014, Myers gave a statement to his Wisconsin supervising agent. Myers admitted that he possessed and consumed marijuana almost every day while on supervision in Iowa, but he denied robbing a bank. He said that on June 19, 2014, upon his release to extended supervision, he went to the U.S. Bank at 2537 West Wisconsin Avenue to cash the checks he had received from the DOC for the money in his inmate trust accounts. He said that neither the U.S. Bank nor a second bank he approached would cash the checks because he lacked proper identification. He said that he ultimately cashed the checks at a currency exchange, that he received approximately $ 300, and that he used the money to buy a $ 140 bus ticket to Iowa.
¶7 In light of the foregoing, the DOC recommended revocation of Myers's extended supervision based on three alleged rule violations: (1) robbing the U.S. Bank; (2) threatening the U.S. Bank staff with a bomb; and (3) possessing and consuming marijuana. The matter proceeded to a hearing before an administrative law judge (ALJ).
¶8 At the outset of the hearing Myers stipulated to possessing and consuming marijuana, and the ALJ accepted that stipulation. The ALJ then received evidence regarding the bank robbery and the bomb threat. That evidence included Myers's statements to his supervising agents, U.S. Bank surveillance video, still photographs from that video, and the results of the palm print analysis. The ALJ also received police reports, including a police report regarding an interview with Myers's mother, Robin Johnson. According to the report, Johnson viewed the bank surveillance video of the robbery suspect and identified the suspect as Myers. Finally, the evidence included information from a Milwaukee detective, Gary Thundercloud, regarding his efforts to determine when the bank had last been cleaned prior to the robbery. Thundercloud testified that he tried to contact the bank's cleaning service, without success. At some point, he received a voicemail message advising that the service cleaned the bank on the night of June 19, 2014.
¶9 The ALJ found that the evidence was insufficient to prove that Myers threatened U.S. Bank personnel with a bomb-the demand note allegedly containing the threat was never found and the teller who received the note did not testify-but the ALJ found that the evidence was sufficient to prove that Myers robbed the bank. In making that finding, the ALJ acknowledged Myers's defense that he went to the bank to transact legitimate business on June 19, 2014, but concluded that "it is highly unlikely that his palm print would still be on [the teller's] counter nearly two business days after" the bank was cleaned. The ALJ then determined that Myers was a poor risk for supervision and that revocation of his extended supervision was necessary to protect the public and to avoid unduly depreciating the gravity of his conduct. Myers appealed to the Division, which affirmed.
¶10 Myers next petitioned the circuit court for a writ of certiorari. Following briefing, the circuit court reversed the revocation of Myers's extended supervision, concluding that the Division improperly admitted and relied in part on hearsay evidence from Thundercloud, namely, his testimony describing the voicemail about the bank's cleaning.
¶11 On remand, the ALJ issued a revised decision without holding a further hearing. The ALJ again revoked Myers's extended supervision upon findings that Myers possessed marijuana and robbed the U.S. Bank. The ALJ explained that "the revised decision ... eliminate[d]" reliance on Thundercloud's hearsay testimony but that the remaining evidence supported the original conclusions. The Division affirmed.
¶12 Myers petitioned again for a writ of certiorari from the circuit court. This time, the circuit court denied the writ, concluding that the decision to revoke his extended supervision was based on sufficient evidence and was not arbitrary, oppressive, or unreasonable. Myers appeals.
Discussion
¶13 Certiorari review of a revocation order is limited to four inquiries. See State ex rel. Tate v. Schwarz , 2002 WI 127, ¶15, 257 Wis. 2d 40, 654 N.W.2d 438. The reviewing court considers only:
"(1) whether the [Division] acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the [Division] might reasonably make the determination that it did."
Id. (citation omitted). We review the Division's decision, not the decision of the circuit court. See State ex rel. McElvaney v. Schwarz , 2008 WI App 102, ¶¶4, 6, 313 Wis. 2d 125, 756 N.W.2d 441.
¶14 We begin with Myers's contention that the evidence was not sufficient to support the revocation decision. At a revocation hearing, the DOC has the burden of proving a violation of the rules of supervision by a preponderance of the evidence. See WIS. ADMIN. CODE § HA 2.05(6)(f) ; see also Von Arx v. Schwarz , 185 Wis. 2d 645, 655, 517 N.W.2d 540 (Ct. App. 1994). On appellate review, we consider a challenge to the sufficiency of the evidence by assessing whether substantial evidence supports the Division's findings. See State ex rel. Washington v. Schwarz , 2000 WI App 235, ¶17, 239 Wis. 2d 443, 620 N.W.2d 414. "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." Von Arx , 185 Wis. 2d at 656 (citation omitted). Our review of the sufficiency of evidence is the same regardless of whether the evidence at issue is direct or circumstantial. See State v. Poellinger , 153 Wis. 2d 493, 503, 451 N.W.2d 752 (1990). If substantial evidence supports the Division's determination, we must uphold that determination, even if the evidence might also support some other conclusion. See Van Arx , 185 Wis. 2d at 656.
¶15 The Division found that Myers committed two violations of the terms of his supervision, namely, that he possessed marijuana and that he robbed a bank. Myers stipulated to the marijuana violation. His stipulation was well-founded. The evidence included his admission to his supervising agent that he smoked marijuana "almost every day" after his release from confinement. Myers does not dispute the sufficiency of the evidence that he possessed marijuana.
¶16 As to the finding that Myers robbed the U.S. Bank, the evidence showed that on June 21, 2014, someone approached the bank's customer service counter, demanded money, and fled with $ 9000. Shortly after the robbery, police found Myers's palm print on the service counter. The ALJ viewed the bank's video surveillance tape and determined that the palm print was "exactly where the robber's right hand appears to be at the counter." Moreover, Myers's physical appearance was consistent with the description of the suspect offered by bank personnel and consistent with the image of the suspect captured on the surveillance video.
¶17 The evidence supported the conclusion that Myers was the person who robbed the bank. Although the evidence was circumstantial, such evidence "is oftentimes stronger and more satisfactory than direct evidence." See Poellinger , 153 Wis. 2d at 501. The Division was entitled to rely on the circumstantial evidence here.
¶18 Myers argues that the DOC did not disprove his defense, namely, that he left his palm print at the U.S. Bank when he tried to cash checks there on June 19, 2014. The DOC, however, was not required to disprove Myers's theory, only to demonstrate that he more likely than not violated the rules of supervision. See State v. Rodriguez , 2007 WI App 252, ¶18, 306 Wis. 2d 129, 743 N.W.2d 460 (citation omitted) (stating that "to prove by a preponderance of the evidence means that it is 'more likely than not' that the examined action occurred"). Here, the ALJ concluded that Myers's "defense that he was in the bank on Thursday [June 19, 2014], is not disproven, just outweighed by the strength of the ... evidence that [Myers] robbed the bank on Saturday [June 21, 2014]." We may not disturb that conclusion. The Division, not this court, weighs the evidence presented at a revocation hearing. See Van Ermen v. DHSS , 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).
¶19 Next, and relatedly, Myers argues that the ALJ improperly received and relied on hearsay evidence that the bank was cleaned on June 19, 2014. This argument is unavailing. Following remand from the circuit court, the ALJ disregarded the hearsay evidence concerning the bank's cleaning and drew no conclusions from it. Both the text of the ALJ's revised opinion and the Division's order affirming that opinion reflect that the hearsay evidence was not a factor in the post-remand finding that Myers robbed the bank.
¶20 Myers next argues that the Division improperly relied on evidence that he told his supervising agent he needed money for bus fare to Iowa. Regardless of whether this evidence was legally objectionable, no factual basis exists for Myer's argument. Neither the ALJ's revised decision nor the Division's order upholding that decision mentions Myers's alleged need for money.
¶21 Myers also wrongly asserts that the Division relied on information that his mother-Johnson-identified him as the robber after viewing the surveillance video. To the contrary, the ALJ explicitly stated in the revised opinion: "I give no weight or reliability to the alleged identification of the offender as the robber by the offender's mother." The Division's order upholding the ALJ's decision does not refer to Johnson's identification of Myers as the robber.
¶22 In sum, the Division assessed whether Myers violated conditions of his extended supervision without regard to the hearsay testimony about the bank's cleaning, or Myers's admission that he needed money, or his mother's statement inculpating him. The remaining evidence that he robbed a bank was nonetheless substantial: someone whose appearance was consistent with Myers's robbed the U.S. Bank, and when that person fled, Myers's palm print remained in the spot where the robber had rested his hand. A reasonable person could accept the evidence as sufficient to support the conclusion that Myers robbed the bank.
¶23 We turn to Myers's second ground for relief, namely, the allegation that the Division's decision to revoke Myers's extended supervision was arbitrary, oppressive, or unreasonable and represented the agency's will rather than its judgment. The burden to prove this allegation rests with Myers. See Von Arx , 185 Wis. 2d at 655. He fails to carry his burden.
¶24 "An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion." Id. at 656. An agency properly exercises its discretion if the agency engages in "a reasoning process based on the facts of record and a conclusion based on a logical rationale founded upon proper legal standards." Id. (citation omitted).
¶25 To support the claim of arbitrary and willful action, Myers revisits his complaints about the sufficiency of the evidence and restates his misunderstanding that the Division "relied [on] unreliable hearsay," namely, the voicemail described by Thundercloud regarding the bank's cleaning. These arguments cannot prevail because, as we have seen, the Division relied on Myers's stipulation to find that he possessed marijuana and on substantial evidence, exclusive of hearsay regarding the voicemail, to find that he robbed the U.S. Bank.
¶26 In light of the findings, the Division determined that "Myers presents an extreme risk to the safety of others in the community. His willingness to engage in such serious criminal conduct shortly after his release to the community shows that he is not likely to comply with any future term of supervision." The Division concluded that he must return to prison "to prevent undue depreciation of the violations and to protect public safety." We are satisfied that the Division reached a reasonable conclusion in light of the facts of record. Indeed, a single violation of a condition of supervision is a sufficient ground for revocation. See State ex rel. Cutler v. Schmidt , 73 Wis. 2d 620, 622, 244 N.W.2d 230 (1976).
¶27 Finally, Myers asserts that he suffered a violation of his due process rights when the circuit court remanded this matter back to the Division for further proceedings after concluding that the ALJ improperly admitted unreliable hearsay evidence at the hearing. Myers contends that "a remand which directs or permits supplementing the record by additional evidence violates due process," and in support he directs our attention to Snajder v. State , 74 Wis. 2d 303, 313, 246 N.W.2d 665 (1976).
¶28 Myers did not raise his due process claim in the circuit court proceedings. Accordingly, we need not consider the claim here. See State v. Huebner , 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (appellate courts generally do not consider matters raised for the first time on appeal). Moreover, were we to consider his claim, we would reject it. The circuit court's order for remand did not require the Division to take additional evidence, nor did the Division receive any additional evidence when the matter returned to the agency. Rather, in the proceedings after remand, the Division assessed the evidence already in the record without holding an additional hearing and resolved the dispute without reliance on the hearsay testimony that the circuit court concluded should not have been admitted. A person does not suffer a due process violation under such circumstances. See Snajder , 74 Wis. 2d at 314 (holding that remand is proper for the purpose of permitting the agency to consider whether evidence in the record is sufficient to justify parole revocation). For all the foregoing reasons, we affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).