COURT OF APPEALS
DECISION
DATED AND FILED

September 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP72-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF1654

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DARRELL K. SMITH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Order reversed and cause remanded with directions*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

¶1 DONALD, P.J. Darrell K. Smith appeals from the judgment of conviction, following a jury trial, for second-degree sexual assault, and an order denying his postconviction motion without an evidentiary hearing.[1] Smith contends that he was deprived of his right to effective assistance of counsel because trial counsel failed to object to: (1) the admission of statements from a non-testifying sexual assault nurse examiner (SANE) in violation of Smith's constitutional right to confrontation; and (2) the admission of a Department of Corrections (DOC) photo of Smith, and testimony from two law enforcement officers, which highlighted that the photo was obtained from the DOC. Upon review, we conclude that Smith is entitled to a *Machner* evidentiary hearing on his ineffective assistance of counsel claims.[2] Therefore, we reverse and remand.

## BACKGROUND

¶2 According to the criminal complaint, on February 6, 2016, A.B. was drinking with several friends, became intoxicated, and went to the Rave Bar, in Milwaukee. The next thing A.B. remembered was waking up in the hospital. At the hospital, A.B. noticed that she was bleeding from her vagina and believed that someone may have had sex with her without her consent. A.B. later underwent a sexual assault examination. DNA swabs were taken and submitted to the Wisconsin State Crime Lab for analysis. A forensic analyst located semen on the swabs, mapped a DNA profile of the semen, and entered it into the Combined DNA Index System (CODIS). The DNA profile from the semen was determined

---

[1] While Smith appeals from both a judgment and an order, we note that we only address the order for the reasons set forth in the opinion.

[2] *See* *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

to match the known profile of Smith. Smith was charged with second-degree sexual assault.

¶3      The case proceeded to a jury trial in 2018. Relevant to this appeal, at the start of the trial, the State indicated that C.H., the SANE who performed the examination of A.B. was unavailable, and L.K., the manager of the SANE program and a former SANE, would be testifying instead.[3] Trial counsel objected based on the "best evidence rule," and the trial court overruled the objection.[4]

¶4      During L.K.'s testimony, the State moved A.B.'s SANE records into evidence. L.K. testified that she did not do the SANE examination of A.B., and that it was C.H. who conducted the examination.

¶5      As part of L.K.'s testimony, the prosecutor had her read into the record, verbatim, what C.H. had written in the "Progress Notes - Encounter Notes" of the SANE records. The notes included:

> Patient returned … accompanied by friend Tiffany who was with her last night at Rave and friend Molly. Patient reports she has returned to have evidence collected and report to police.
>
> Patient reports she has not called police at this time and wishes for them to be contacted prior to being seen by the R.N. to speed up process.
>
> Patient willing to be seen by R.N. while waiting for police arrival. Milwaukee Sensitive Crimes contacted by R.N. at 21:04. Notified that squad will be sent out.

---

[3] The record indicates that at the time of the trial, C.H. no longer worked at the hospital. The record, however, does not contain any details regarding C.H.'s unavailability.

[4] The Honorable Mark A. Sanders presided over the trial. The Honorable Stephanie Rothstein presided over the postconviction proceedings. We refer to Judge Sanders as the trial court and Judge Rothstein as the postconviction court.

The notes went on to state:

> Patient reports she and friends had been drinking prior to going to the Rave to see a show. Patient states she is unsure of the exact quantity consumed but states it was a fair amount. Patient reports she was intoxicated when they left….
>
> ….
>
> Patient reports she did not have a memory of having a drink once getting to the Rave. Patient has no further memory after arrival at the Rave until awakening at … about five a.m. this morning.
>
> Patient reports from what she has been told by friends she and her friend Tiffany were in a cab and were kicked out of the cab. The patient's ex-boyfriend's friend witnessed this and brought them to his home at prior to midnight.
>
> Patient reports she lost her ID, credit card, debit card and coat. Milwaukee Sensitive Crimes spoke with patient at [the sexual assault treatment center] to take report.
>
> Patient had evidence collected and full head-to-toe exam. Patient reports genital exam done earlier in day. Patient declines photos at this time. Patient had all medications including emergency contraception earlier…. Reviewed home [medication] instructions with patient. Discharged, reviewed.

The prosecutor also asked L.K. about other information in the records, including the chain of custody evidence report,[5] the anatomical diagrams, and A.B.'s description of the assault.

---

[5] The biological evidence obtained from A.B. included swabs (vaginal, cervical, external genitalia, right inner thigh, left inner thigh, and right side trunk), three tubes of blood, and three tubes of urine. Clothing items, including A.B.'s underwear, were also collected.

¶6 In addition, during the trial, the State moved into evidence a DOC photo of Smith that was shown to A.B. The following exchange took place with Detective Jon Charles:

> STATE: Detective, I'm showing you what's been marked as State's Exhibit 1. Can you tell me what that is?
>
> DET.: *It's a department of correction—Wisconsin Department of Corrections photo of the defendant.*
>
> STATE: So is this a fair and accurate photograph of the picture that you showed [A.B.]?
>
> DET.: I believe this is the picture I showed her.
>
> STATE: And what makes you believe that?
>
> DET.: When I showed it to her, *it was a department of corrections photo.* This is the photo that I personally placed in the—we have files in sensitive crimes. I placed this in a file, and that's where it was located.

(Emphasis added.)

¶7 Subsequently, the following exchange took place with Detective Jolene Del Moral:

> STATE: Given that it appeared Mr. Smith was unknown to [A.B.], but his DNA had linked to her sex kit, what did you do to follow up with that investigation?
>
> DET.: So normally when we have that type of information, what we would do is—a lot of times we would check our own database to see if the person would be on file with us. Mr. Smith was not on file with us. What we would do is normally get a picture to see if she knows him. He was not on file with us, *so then my next option was to check the department of corrections, and he was on file.*
>
> ....
>
> STATE: Detective Del Moral, I'm showing you what's been marked as Exhibit 1. Do you recognize that?
>
> DET.: Yes, I do.

> STATE: And what it is?
>
> DET.: *That's the photo of Mr. Smith from the department of corrections.*

(Emphasis added.) Trial counsel did not object, move to strike, or seek a limiting or curative instruction in regards to the DOC references.

¶8     Smith was found guilty, and filed a postconviction motion. Smith argued that the admission of C.H.'s statements, as relayed in the SANE records and L.K.'s testimony, constituted a Confrontation Clause violation, and trial counsel was ineffective for failing to object. Smith also argued that trial counsel was ineffective for failing to object to the admission of the DOC photograph, and the testimony from the two law enforcement officers, which highlighted for the jury that the photograph of Smith was obtained from the DOC.

¶9     The postconviction court denied the motion without an evidentiary hearing. The court found that there was no Confrontation Clause violation. The court also stated that trial counsel was not deficient for failing to challenge an area of unsettled law. In addition, the court found that there was not a reasonable probability that the references to the DOC as the source of the photo had any impact on the outcome of the trial. Smith appeals. Additional relevant facts are referenced below.

## DISCUSSION

¶10     On appeal, Smith renews his argument that he was deprived of his right to effective assistance of counsel because trial counsel failed to object to: (1) the admission of C.H.'s statements, as relayed through the SANE records and L.K.'s testimony, on the grounds that the evidence violated Smith's constitutional right to confrontation; and (2) the admission of the DOC photo of Smith, and the

testimony from the two law enforcement officers, which highlighted that the photo of Smith was obtained from the DOC.

¶11   To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To prove deficient performance, a defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance."   *Id.* at 690.   To demonstrate prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.

¶12   When evaluating whether a defendant is entitled to an evidentiary hearing, we first independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."   *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.   Even if, however, "the motion alleges sufficient facts, an evidentiary hearing is not mandatory if the motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief."   *Id.*, ¶3; *see also State v. Spencer*, 2022 WI 56, ¶49, 403 Wis. 2d 86, 976 N.W.2d 383.   "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently."   *Spencer*, 403 Wis. 2d 86, ¶23 (citation omitted).   "If the record conclusively demonstrates the defendant is not entitled to relief, the circuit court has the discretion to decide whether to hold a hearing, which we review for an erroneous exercise of discretion."   *Id.*

7

¶13    As discussed below, we conclude that Smith is entitled to an evidentiary hearing on both of his claims.  Smith's motion alleged sufficient material facts that, if true, would entitle him to relief.  ***Ruffin***, 401 Wis. 2d 619, ¶27.  Additionally, the record does not conclusively demonstrate that Smith is not entitled to relief on his claims.  *See **id.***, ¶28; ***Spencer***, 403 Wis. 2d 86, ¶23.

## A.  Confrontation Claim

¶14    The Confrontation Clauses of the United States and Wisconsin Constitutions guarantee criminal defendants the right to confront witnesses against them.   U.S. CONST. amend. VI; WIS. CONST. art. I, § 7.   In ***Crawford v. Washington***, 541 U.S. 36 (2004), the United States Supreme Court held that "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." ***Id.*** at 59.

¶15    In determining whether an out-of-court statement is testimonial, we examine "'whether, in light of all the circumstances, viewed objectively,' the 'declarant is acting as a witness against the defendant[.]'" ***State v. Nelson***, 2021 WI App 2, ¶29, 395 Wis. 2d 585, 954 N.W.2d 11 (citation omitted).  In doing so, we consider "whether the 'primary purpose' of the statement was to 'gather evidence for the defendant's prosecution' or 'substitute for testimony in a criminal prosecution.'"  ***Id.*** (citation and brackets omitted).   Under the primary purpose test, some factors relevant to our analysis include:  "(1) the formality/informality of the situation producing the out-of-court statement; (2) whether the statement is given to law enforcement or a non-law enforcement individual; (3) the age of the declarant and (4) the context in which the statement was given." ***State v. Mattox***, 2017 WI 9, ¶32, 373 Wis. 2d 122, 890 N.W.2d 256 (footnote omitted).

¶16     Based on our review of the postconviction motion, we first conclude that Smith alleged sufficient material facts, that if true, entitle him to a *Machner* hearing.  *See **Ruffin***, 401 Wis. 2d 619, ¶27; ***Spencer***, 403 Wis. 2d 86, ¶23. Smith's postconviction motion alleged that trial counsel was deficient for failing to object to the admission of C.H.'s written statements in the SANE documentation and L.K.'s testimony as a violation of his right to confrontation pursuant to *Crawford*.  The motion explained that C.H.'s statements were testimonial, and that Smith did not have a prior opportunity to cross-examine C.H.

¶17     The postconviction motion also alleged that trial counsel's failure to object prejudiced him because the admission of the SANE documentation and L.K.'s testimony established the origin of the swab samples from which Smith's DNA profile was developed.  According to Smith, without this evidence, insufficient foundation existed to introduce the DNA evidence linking him to A.B. In addition, Smith alleged that he was prejudiced because he did not have an opportunity to challenge the integrity of the evidence and documentation collection procedures.

¶18     Next, we examine whether the record conclusively demonstrates that Smith is not entitled to relief.  *See **Ruffin***, 401 Wis. 2d 619, ¶28; ***Spencer***, 403 Wis. 2d 86, ¶23.  We conclude that it does not.

¶19     The State contends that trial counsel's failure to object was not deficient performance because the SANE examination report was nontestimonial, so its admission did not violate Smith's right to confrontation.  According to the State, the primary purpose of the SANE examination was to determine what happened to A.B. for treatment purposes, and to respond to a potential ongoing emergency.  The State emphasizes that the SANE examination took place in an

informal setting, a hospital, and was a conversation between a patient and a nurse, a non-law enforcement individual.[6] Based on the particular facts in this case, however, we reject the State's argument and conclude that Smith's right to confrontation was violated. *See Nelson*, 395 Wis. 2d 585, ¶¶63-64 (Davis, J., concurring) (emphasizing that "a SANE or similar exam may give rise to testimonial evidence in one situation and not another").

¶20     To start, we note that the record reflects that A.B. was evaluated by medical personnel three separate times on February 7, 2016.[7] At approximately 12:35 a.m., A.B. went to the emergency room at Columbia St. Mary's hospital. A.B. was discharged at 4:18 a.m. and advised to proceed to Aurora Sinai Medical Center. At approximately 4:51 a.m., A.B. arrived at the Aurora Sinai emergency room, and was discharged at 6:38 a.m. Fourteen hours later, at 8:56 p.m., A.B. returned to Aurora Sinai and underwent a sexual assault examination at the sexual assault treatment center.

¶21     Smith does not contend that A.B.'s emergency room visits were anything other than medical in nature. Smith, however, asserts that the primary purpose of A.B.'s visit to the sexual assault treatment center was for the collection of evidence to be used in a criminal prosecution. We agree. C.H.'s notes expressly indicate, "[p]atient reports that she has returned to have evidence

---

[6] The State also discusses the "age of the declarant." *See State v. Mattox*, 2017 WI 9, ¶32, 373 Wis. 2d 122, 890 N.W.2d 256. We agree with the State that because C.H. is an adult, this is a neutral factor. *See State v. Reinwand*, 2019 WI 25, ¶29, 385 Wis. 2d 700, 924 N.W.2d 184 (stating "that the declarant is an adult is a neutral factor, making the statement neither more nor less likely to be testimonial").

[7] We note that Smith suggests that A.B. was evaluated by medical personnel two separate times. A review of A.B.'s medical records, however, reflect that she was evaluated three separate times.

collected and report to police" and that A.B. wanted the police to be contacted prior to being seen by the nurse in order to "speed up [the] process." C.H.'s notes further indicate that the "Milwaukee Sensitive Crimes" unit was contacted, and that A.B. was notified that a "squad will be sent out."

¶22 In addition, during A.B.'s visit at the sexual assault treatment center, A.B. signed a consent form, which stated that a SANE "has explained to me that a medical/forensic exam is not a routine medical checkup," the SANE performing the exam "will not identify, diagnose, or treat any existing medical problems that I may have," and "I understand that if the evaluation and care of any physical trauma or psychiatric condition is beyond the scope of the medical/forensic exam, I will be referred to a physician or to the Emergency Department at Aurora Health Care for further medical examination or treatment."

¶23 The consent form also authorized the SANE to perform the following services: (1) "[v]isually inspect injuries and possible areas of assault"; (2) "[c]ollect evidence, which may include hair combings, body fluid samples and clothing"; (3) "[c]ollect blood and/or urine to send for laboratory testing, for the detection of drugs or alcohol used to facilitate the assault"; (4) "[p]hotography of external body areas and/or internal anogenital areas, by use of colposcope and/or camera, for the purpose of documenting injury and providing ongoing medical care, evaluation and/or consultation." Thus, these facts overall establish that the primary purpose of the sexual assault examination was to collect evidence.

¶24 Moreover, there was not an ongoing emergency at the time of the SANE examination, which would render the statements nontestimonial. *See Davis v. Washington*, 547 U.S. 813, 822 (2006). As the State acknowledges, A.B. "had absolutely no memory of nearly the entire night leading up to her arrival in the

hospital." Thus, C.H. could not have known whether a crime had actually been committed. *Cf. Michigan v. Bryant*, 562 U.S. 344, 374 (2011) (holding that there was an "ongoing emergency" where there was an armed shooter on the loose).

¶25 Thus, taking into consideration the particular facts of this case—including that A.B. returned to the hospital for the collection of evidence and to "report to police"—we conclude that C.H.'s statements were testimonial, and thus, the admission of the statements violated Smith's right to confrontation. *See Crawford*, 541 U.S. at 59.

¶26 The State also argues that trial counsel did not perform deficiently because the law was not settled. While it is true that there may not have been binding Wisconsin law addressing this specific factual scenario in 2018 at the time of the trial in this case, the legal principles regarding a defendant's right to confrontation were well-established. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); *State v. Mattox*, 2017 WI 9, 373 Wis. 2d 122, 890 N.W.2d 256.

¶27 Under the particular fact pattern presented in this case and the law in existence at the time of the trial, we are not persuaded here that the record conclusively shows that an objection based on the Confrontation Clause would be so novel that a defense attorney would not be expected to make it. *See generally State v. Peebles*, 2010 WI App 156, ¶28, 330 Wis. 2d 243, 792 N.W.2d 212 (holding that a Fifth Amendment challenge was "not so novel that counsel should not be expected to have made it"). We emphasize, however, that we are not drawing any conclusions in this opinion about whether trial counsel performed deficiently. Whether trial counsel performed deficiently is a question to be determined on remand by the circuit court after taking testimony. *See State v.*

*Sholar*, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89. At the hearing, the postconviction court can learn exactly why counsel did not object and whether the failure to do so was a reasoned choice or an oversight. *See Nelson*, 395 Wis. 2d 585, ¶69 (Davis, J., concurring).

¶28 Finally, we observe that the State does not explicitly address the question of whether Smith was prejudiced by trial counsel's failure to object. *See Strickland*, 466 U.S. at 687. We view this as a concession that the record does not conclusively show that Smith would not be entitled to relief on the prejudice prong. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that unrefuted arguments are deemed conceded).

¶29 Moreover, based on our independent review of the record, we conclude that the record does not conclusively show that Smith would not be entitled to relief on the prejudice prong. The record reflects that A.B. did not have any memory after she arrived at the Rave until the following day when she woke up at the hospital. The only evidence that linked Smith to A.B. was the DNA evidence. As Smith explains, L.K.'s testimony and the SANE records established the origin of the swab samples from which Smith's DNA profile was developed. Thus, if L.K.'s testimony and the SANE records were inadmissible on confrontation grounds, there would not be a factual foundation or evidentiary basis for the DNA analyst's testimony that Smith was the source of DNA found on the swabs from A.B.,[8] or at minimum, the significance of the DNA evidence would

---

[8] *See generally* WIS. STAT. § 907.02(1) (2019-20); *State v. Giese*, 2014 WI App 92, ¶18, 356 Wis. 2d 796, 854 N.W.2d 687 (stating that a court's function is to ensure that an expert's opinion is based on a reliable foundation). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

have been diminished as it would be unknown whether the evidence was in fact from A.B.

¶30    In addition, because C.H. did not testify, Smith was deprived of an opportunity to cross-examine C.H. about what she observed and recorded, including whether the swabs and evidence taken from A.B. were in fact from A.B. Once again, however, we note that we are not drawing any ultimate conclusions about whether Smith was prejudiced. *See Sholar*, 381 Wis. 2d 560, ¶54. Rather, we are only determining that the record does not conclusively show that Smith would not be entitled to relief. *See Ruffin*, 401 Wis. 2d 619, ¶28; *Spencer*, 403 Wis. 2d 86, ¶23.

¶31    Therefore, we conclude that Smith is entitled to a *Machner* hearing. On remand, we direct the circuit court to hear testimony and determine whether trial counsel performed deficiently and whether Smith was prejudiced. *See Sholar*, 381 Wis. 2d 560, ¶54.

## B. DOC Photograph and Corresponding Testimony Claim

¶32    Smith's postconviction motion alleged that trial counsel was ineffective for failing to object to the admission of the DOC photograph, and the testimony from the two law enforcement officers, which highlighted for the jury that the photograph of Smith was obtained from the DOC. Once again, we conclude that Smith is entitled to a *Machner* hearing.

¶33    First, Smith's motion alleged sufficient material facts, that if true, entitle him to a *Machner* hearing. *See Ruffin*, 401 Wis. 2d 619, ¶27; *Spencer*, 403 Wis. 2d 86, ¶23. The postconviction motion alleged that trial counsel had legal grounds to object to the photograph and the testimony on the basis that the

evidence was improper other-acts evidence and that it was irrelevant to whether Smith assaulted A.B. *See* WIS. STAT. § 904.04(2)(a) (stating that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith"); WIS. STAT. § 904.01 (stating that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

¶34     The motion further alleged that trial counsel's failure to object was prejudicial because the jury was able to consider improper evidence in evaluating the State's case and Smith's defense. The motion observed that the evidence that the photo was obtained from the DOC communicated to the jury that Smith had been in prison or supervision in the past, and that he had been previously convicted of a crime.

¶35     The motion also observed that the "harmful depiction" of Smith was "made more meaningful given that Smith did not testify in the case." The motion explained that had Smith testified, the State could have impeached his testimony by asking him if he had ever been convicted of a crime, and if so, how many times. *See* WIS. STAT. § 906.09(1). However, here, because Smith did not testify, the evidence that the photo came from the DOC gave the State "an indirect yet improper vehicle" to elicit Smith's past criminal history.[9]

---

[9] The State argues that any impact the DOC photo may have had on the jury was "significantly tempered" by the fact that the jury also heard that Smith's DNA was entered into the CODIS database. As the State acknowledges, however, the jury was told that the DNA profiles in CODIS are from "convicted offenders *or other individuals based on state law*" (emphasis added). In other words, an individual's profile is not necessarily in CODIS because the individual was a convicted offender.

¶36    Moreover, the record does not conclusively demonstrate that Smith is not entitled to relief. *See* **Ruffin**, 401 Wis. 2d 619, ¶28; **Spencer**, 403 Wis. 2d 86, ¶23. The State contends that the DOC photo was properly introduced for the permissible purpose of proving that A.B. did not know or recognize Smith. *See* WIS. STAT. § 904.04(2)(a). The fact, however, that the photo came from the DOC does not establish that A.B. knew or recognized Smith. As Smith observes, the State could have simply introduced evidence that it had showed A.B. a photograph of Smith, without referencing where it came from, and omitted any reference to the DOC from the photograph.

¶37    The State also contends that Smith was not prejudiced because the evidence of his guilt was "overwhelming." We disagree. The State asserts that there was no doubt that Smith had sexual intercourse with A.B. as his semen was located on both a vaginal swab and a cervical swab from A.B. Even if we assume that this evidence is not subject to exclusion due to a confrontation clause violation, the presence of Smith's semen is not overwhelming evidence of guilt.

¶38    In addition to proving that Smith had sex with A.B., to convict Smith, the State also had to prove that A.B. was under the influence of an intoxicant to a degree which rendered her incapable of giving consent. *See* WIS. STAT. § 940.225(2)(cm) (2015-16); WIS JI—CRIMINAL 1212. However, as Smith asserted in his postconviction motion, there was evidence supporting that A.B. was not so intoxicated that she lacked capacity to consent. The evidence elicited at trial included A.B.'s testimony that she only had a "medium" amount to drink that night, and denied taking narcotics, ecstasy, or "anything like that." Additionally, when A.B. was at the emergency department, the provider notes observed that she was "awake, alert and oriented," and that her vital signs were "normal." Further, a

16

toxicologist testified that no conclusive evidence of any type of "date rape" drug was found in A.B.'s blood or urine.[10]

¶39 Finally, the State notes that Smith initially denied having sexual intercourse with A.B. to the police, which according to the State reflects consciousness of guilt. However, this evidence by itself does not constitute overwhelming evidence of guilt.

¶40 Thus, again, we conclude that Smith alleged sufficient material facts in his postconviction motion, and that the record does not conclusively demonstrate that he is not entitled to relief. *See **Ruffin***, 401 Wis. 2d 619, ¶¶27-28; ***Spencer***, 403 Wis. 2d 86, ¶23. Accordingly, Smith is entitled to a ***Machner*** hearing on his claim that trial counsel was ineffective for failing to object to the admission of the DOC photograph and the corresponding testimony.

¶41 In sum, we reverse and remand for a ***Machner*** hearing on both of Smith's claims. As stated above, we repeat, however, that we are not concluding that trial counsel performed deficiently or that Smith suffered any prejudice. *See **Sholar***, 381 Wis. 2d 560, ¶54.

> *By the Court.*—Order reversed and cause remanded with directions.
>
> Not recommended for publication in the official reports.

---

[10] A.B.'s urine initially screened positive for Rohypnol. However, a follow-up test did not confirm this result.